**TENNGASCO GAS GATHERING COMPANY, Appellant,**

v.

**Betty Jane Wright BATES, et al., Appellees.**

No. 1935cv.

Court of Appeals of Texas, Corpus Christi.

Sept. 23, 1982.

Rehearing Denied Nov. 18, 1982.

William H. Keys, Keys, Russell & Seaman, Corpus Christi, for appellant.

M.W. Meredith, Jr., Meredith & Donnell, Corpus Christi, E.B. Grimes, Robstown, for appellees.

Before NYE, C.J., and YOUNG and GONZALEZ, JJ.

## OPINION

YOUNG, Justice.

Tenngasco Gas Gathering Company appeals from a judgment based on a jury verdict awarding $117,552.30 to Betty Jane Wright Bates and other owners of a 160 acre tract for a permanent easement for a gas pipeline. Appellant brings forth nine points of error. We affirm.

The land involved in this case is located in Nueces County and is presently being used for farming. Although the property has never been platted as a subdivision, testimony established that subdividing for residential purposes is its highest and best use. The gas pipeline easement requested is a 20 feet wide strip across the land which comprises a total of 1.523 acres.

Raymond Kallas, an employee of the firm which manages Tenngasco, related general information concerning the construction of the pipeline. He outlined the procedures for detection and prevention of leaks and ruptures as well as the potential consequences of a large leak: fire or explosion. Mr. Kallas stated that in areas with a greater number of dwellings, federal regulations require more detailed inspections.

On the appellees' behalf, John H. Reagan testified about the value of the land before and after the taking of the pipeline easement. Among the factors he considered in formulating his opinion were the sales prices of lots in existing developed subdivisions. The appellant's expert was E. Charles Lewis. Both experts testified to the value of the permanent easement before and after the taking, the value of the remainder of the land before and after the taking, and the damages resulting from the temporary construction easement. Cecil Wright, one of the landowners, also described the losses to his crop yield brought about by the pipeline construction. Special issues

were submitted to the jury about each category of damages. The jury found that the value of the easement strip was decreased by $1,066.10 after the taking and that the damages attributable to the temporary construction easement was $5,552.30. The findings of the jury and the testimony of the experts with regard to the change in value of the remainder of the land are summarized in the chart below.

|  | Reagan | Lewis | Jury |
|---|---|---|---|
| Before Taking | $475,431.00 | $246,860.00 | $396,192.50 |
| After Taking | $398,192.00 | $246,860.00 | $285,258.60 |
| Damages | $ 77,239.00 | $ -0- | $110,933.90 |

Thus, the total damages found by the jury for the temporary easement, permanent easement, and decrease in value for the remainder of the land was $117,552.30. The jury did not make findings on the amount of damages, rather they simply found the values before and after the taking.

In a motion for new trial, Tenngasco challenged the jury's findings on damages to the remainder of the property and maintained that there had been jury misconduct which warranted reversal.

In its appellate brief, Tenngasco reiterates the jury misconduct argument. The essence of this argument is that the consideration by the jury of matters not in evidence before it probably caused the rendition of an improper verdict. Tenngasco maintains that the possibility of pipeline explosions was not in evidence and that the jury's discussion of this matter resulted in an inflated verdict.

We reject appellant's arguments because the record contains specific references to the dangers of gas pipelines. The testimony of Kallas, which alludes to the possibility of fires and explosions and to the federal requirement of additional inspection in more densely populated areas, could easily lead the jury to infer that houses near the pipeline are subject to increased danger. The appellant has not demonstrated that the jury considered any evidence from outside the record. The first two points of error are overruled.

■ In the third through fifth points of error, Tenngasco claims that the court erred in admitting the testimony of John Reagan, the appellees' expert value witness, because he based his opinion on the sales price of individual lots in existing subdivisions. Our scrutiny of the record convinces us that the appellant's characterization of Reagan's testimony is inaccurate. He never testified to the value of subdivided property, rather that his knowledge of these values was one of the factors upon which he based his opinion.

Prices paid for subdivision lots are inadmissible in valuing raw acreage. *State v. Willey*, 360 S.W.2d 524, 525 (Tex.1962). Weaknesses of the facts, however, in support of an expert's opinion go to the weight of his testimony not its admissibility. *State v. Sides*, 348 S.W.2d 446 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.). Therefore, we hold as we did in *Tenngasco v. Fischer*, 624 S.W.2d 301, 304 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.), that the trial court did not err in admitting Reagan's testimony.

The sixth through ninth points of error dispute the jury findings on the values of the remaining land before and after the taking in "no evidence," "insufficient evidence," and "against the great weight and preponderance of the evidence" contentions. Since there was no special issue requiring a finding of damages but separate issues inquiring as to the value of the land before and after, appellant challenges the legal and factual sufficiency of the evidence supporting each of these issues.

■ When confronted with a no evidence-point of error, this Court is required to consider only that evidence which supports the finding and then in its most favorable light. *Schaefer v. Texas Employer's Insurance Assoc.*, 612 S.W.2d 199, 201 (Tex. 1981). In reviewing factual insufficiency points, we must examine the entire record to determine whether the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

■ In condemnation cases, the jury may select from the testimony on the question of value and set the value at any amount between the highest and lowest expressed by the experts. *Central Power & Light v. Martinez*, 493 S.W.2d 903, 908 (Tex.Civ.App.—Corpus Christi 1973, no writ). Thus, a jury may blend all the evidence admitted before it. *Texas Electric Service Co. v. Wheeler*, 550 S.W.2d 297, 301 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.); *Hester v. State*, 497 S.W.2d 501, 505 (Tex.Civ.App.—El Paso 1973, writ ref'd n.r.e.).

■ In the case before us, it appears that in estimating values the jury did blend the testimony of the two experts to arrive at figures which were between the two opinions. We hold, therefore, that there was some evidence and sufficient evidence to support the jury's answer to the before and after taking special issues. Also, the jury's answers are not contrary to the overwhelming weight and preponderance of the evidence. Appellant's points six through nine are overruled.

The judgment of the trial court is affirmed.