f:\judge-mk\batty-IH\huff 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-93-121-CV





STATE OF TEXAS,



 APPELLANT


vs.





HOWARD HUFFSTUTLER,



 APPELLEE



 




FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY



NO. 001966, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING



 





 Appellant, the State of Texas, appeals from a judgment awarding appellee, Howard
Huffstutler, damages in the amount of $310,000 for the statutory condemnation of Huffstutler's
property. The trial court granted Huffstutler's motion for judgment notwithstanding the verdict
on the jury question as to the value of Huffstutler's property on the date of taking. We will
reverse the judgment and remand the cause for a new trial.



BACKGROUND


 The State began condemnation proceedings against Huffstutler in 1990 in order to
acquire his property for the expansion of Ben White Boulevard in Austin, Texas. A special
commissioners' hearing awarded Huffstutler $325,000 for the taking and the State filed objections
on the basis that the award was excessive. In preparation for trial, Huffstutler served the State
with several requests for discovery, including a request to identify every person who would testify
on the State's behalf as an expert. The State identified Patricia Williamson, a real estate
appraiser, as one of its expert witnesses. Interrogatory #5 asked the State to identify "every
person or entity whose opinions, observations, tests, measurements, or data was reviewed or
utilized in the expert's work on this case." The State objected to the interrogatory under Tex. R.
Civ. P. 166(b) on the ground that the question was overbroad, but stated that Huffstutler could
see the appraisal report of Patricia Williamson in order to obtain the requested information. 
Huffstutler took Williamson's deposition on November 24, 1992, and at that time discovered that
Eric MacEwan, an engineer, had assisted in the preparation of her appraisal report. In responding
to the interrogatories, the State had failed to identify MacEwan as a person whose observations
Williamson reviewed or utilized. 

 On December 4, 1992, the trial court heard Huffstutler's pretrial motion to prohibit
Williamson's expert testimony. In response, the State argued that MacEwan had not been a
substantial participant in formulating Williamson's opinion regarding the property's highest and
best use and that, because Williamson's report contained a page outlining MacEwan's credentials
and because MacEwan had signed the report, Huffstutler was aware that MacEwan had been
involved in creating the appraisal report. Huffstutler responded that his copy of the report did not
contain MacEwan's signature, although it did contain his resume or vitae. The trial court refused
to strike Williamson's testimony at that time, but indicated that it might be willing to reconsider
the motion at a later time if the evidence indicated the motion was proper.

 At trial, Huffstutler called Clint Sayers, a real estate appraiser, to the stand. He
testified that the highest and best use of the property was retail and that his estimate of the value
of the property for this use was $310,000. The landowner, Huffstutler, testified that the highest
and best use of the property was retail. Huffstutler estimated that the value of the property at the
time of the taking was $450,000.

 The State offered the testimony of an architect/planner and a commercial real estate
broker to establish that the highest and best use of the property was its present use as office space. 
Both witnesses testified about the problems associated with converting Huffstutler's building from
office to retail use. Both expressed the opinion that the property was not a good retail site. The
State then called Williamson to the stand. Huffstutler again presented his motion to exclude
Williamson's testimony to the court. The trial court conducted a hearing outside the presence of
the jury on this motion. During Huffstutler's examination of Williamson, she admitted that,
although the final conclusions in the report were hers alone, MacEwan had prepared drafts of the
report and had participated in the appraisal process. 

 The trial court ruled that Williamson would not be permitted to testify. The State
then asserted that Huffstutler had waived his right to object to the State's failure to include
MacEwan in its answer to Interrogatory #5 because Huffstutler had not objected to the sufficiency
of the State's answer in a timely manner. The trial court then found that, if Huffstutler had
waived the objection, the waiver resulted from the State's misrepresentation that Williamson alone
had compiled the report, and therefore any waiver did not preclude the objection. The trial court
refused to grant the State a continuance so that it could obtain a new value witness. Consequently,
the State offered no testimony as to the value of the tract as office space.

 At the close of the evidence, the jury was presented with a single question: "What
is the fair market value of the Huffstutler property on September 19, 1991, without any
consideration of the roadway project?" The jury found that the fair market value was $230,000.

 Huffstutler moved for judgment notwithstanding the verdict, arguing that the jury's
finding of $230,000 was not supported by the evidence. The trial court granted the motion and
ruled that $310,000 was the proper amount of damages because that amount was the value
testimony closest to the jury's finding of $230,000.



POINTS OF ERROR


 The State appeals, raising four points of error. First, the State argues that the trial
court erred in ruling that Huffstutler's failure to request a hearing on the State's objection to
Interrogatory #5 did not waive Huffstutler's complaint that the State failed to timely identify
MacEwan as a person whose opinions, observations, tests, measurements, or data was reviewed
or utilized in the State's appraisal expert's work on the case. Second, the State contends that the
trial court erred in imposing the "death penalty" sanction of striking the State's only expert
witness as to the value of the property for alleged discovery abuses. Third, the State argues that
the trial court erred in rendering a judgment notwithstanding the verdict in Huffstutler's favor
because the evidence supported the jury's verdict of $230,000. Fourth, the State contends that
the trial court erred in granting judgment notwithstanding the verdict for $310,000 because
Huffstutler's witnesses gave a range of testimony as to the value of the property and, thus, the
court could not rule as a matter of law that the lower figure established the amount of damages.



DISCUSSION


 In its third point of error, the State contends that the trial court improperly rendered
judgment notwithstanding the verdict because the evidence presented at trial supported the jury's
verdict of $230,000 as the fair market value of the property. We disagree.

 A trial court may "disregard any jury finding on a question that has no support in
the evidence." Tex. R. Civ. P. 301. In determining whether the evidence was sufficient to
support the jury verdict, we must consider the testimony in the light most favorable to the party
against whom the motion is sought, and indulge every reasonable inference that can be deduced
from the evidence in that party's favor. Trenholm v. Ratcliff, 646 S.W.2d 927, 931 (Tex. 1983);
Dowling v. NADW Mktg., Inc., 631 S.W.2d 726, 728 (Tex. 1982). We must affirm the jury's
verdict if there is any evidence of probative value to support it. International Armament Corp.
v. King, 686 S.W.2d 595, 597 (Tex. 1985); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). 

 Viewing the evidence in the light most favorable to the State, we find that the trial
court properly granted Huffstutler's motion for judgment notwithstanding the verdict because there
was no evidence to support the jury's finding of $230,000 as the value of the property on the date
of taking.

 Evidence admitted at trial about the value of the property was based on the
testimony of two witnesses, Clint Sayers, a real estate appraiser, and Howard Huffstutler, the
owner of the property. Both testified on behalf of Huffstutler that the highest and best use of the
property was retail and each based his estimate of the value on this type of use. Sayers estimated
the value at $310,000 and Huffstutler stated that the value was $450,000. The State was not
allowed to present the testimony of its only value witness because of alleged discovery abuses.

 Two of the State's witnesses testified that retail was not the highest and best use
of the property. One witness testified that it was not feasible to convert the whole building to
retail use because of parking regulations. The second witness opined that, because of the lack of
visibility and accessibility from Ben White Boulevard, the building was not retail property. 
However, neither witness was qualified to give an estimate of the fair market value of the property
on the date of taking. Thus, the only value amounts in evidence were $310,000 and $450,000.

 The jury returned a unanimous verdict of $230,000. Clearly, the jury was not
convinced either that the highest and best use of the property was retail or that the property was
worth the amounts admitted at trial and, thus, substituted its own judgment of the fair market
value of the property. In most situations, jurors are not bound to accept expert testimony. 
McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). However, although a jury is not
bound as a matter of law to accept expert witnesses' testimony, the supreme court has held that
jurors are not allowed "to leap entirely outside of the evidence in answering any question
submitted to them." Callejo v. Brazos Elec. Power Coop., Inc., 755 S.W.2d 73, 75 (Tex. 1988). 
In a condemnation case, the jury is allowed to set the value at any amount between the lowest and
highest values the expert witnesses put in evidence. Tenngasco Gas Gathering Co. v. Bates, 645
S.W.2d 496, 498 (Tex. App.--Corpus Christi 1982, writ ref'd n.r.e.). Here, because the State was
prevented from offering the testimony of its value witness concerning the fair market value of the
property, the jury was left to speculate what the value of the property would be if the highest and
best use of the property were as office space rather than retail space. Because no evidence
admitted at trial supported the jury's finding, the trial court properly disregarded the jury's finding
and rendered judgment notwithstanding the verdict. Tex. R. Civ. P. 301. The State's third point
of error is overruled.

 In its fourth point of error, however, the State argues that it was improper for the
trial court to render judgment notwithstanding the verdict for $310,000, thus substituting the trial
court's finding on value for that of the jury. Huffstutler responds that the trial court acted
properly based on the supreme court's holding in Callejo v. Brazos Electric Cooperative, Inc.,
755 S.W.2d 73 (Tex. 1988). 

 Callejo concerned the valuation of an easement for an electrical transmission line
before and after condemnation. Two issues were submitted to the jury on the pre- and post-taking
values of the subject property. Callejo and his witnesses testified that the post-taking value of the
strip was zero, while the two expert witnesses for Brazos testified that the post-taking value was
$33,541. The jury found that the post-taking value of the easement was $364,928.80. The jury's
verdict was outside the range of post-taking values given by either party's expert witnesses. The
trial court granted Callejo's motion for judgment notwithstanding the verdict and substituted its
own judgment of $33,541 as the post-taking value of the property. The supreme court held that
it was proper for the trial court to disregard the jury's answer on post-taking value because there
was no evidence to support it. Callejo, 755 S.W.2d at 76. 

 The State maintains that the facts of the instant case distinguish it from Callejo. 
In Callejo, the only issue on appeal was whether it was proper for the trial court to disregard the
jury's answer because no evidence admitted at trial supported it. (1) Thus, the supreme court did
not address the issue of whether it was proper for the trial court to substitute its own finding on
post-taking value. Therefore, the issue presented in the instant case is not resolved by Callejo. 
In addition, both parties in Callejo were allowed to present testimony about the post-taking value
of the property, and the testimony of each party's witnesses was consistent. Callejo, 755 S.W.2d
at 74. In contrast, the State here was prevented from offering the testimony of its only value
witness as to the fair market value of the property on the date of taking. Unlike Callejo, the two
value witnesses for Huffstutler gave quite disparate testimony on the value of the property:
$310,000 and $450,000. For these reasons, the facts presented in the instant case are
distinguishable from Callejo.

 The State contends that the recent case of Wegner v. State, 829 S.W.2d 922 (Tex.
App.--Tyler 1992, writ denied), is directly on point. Wegner involved the State's taking of a part
of the Wegners' farm. At trial, the jury was asked to determine the difference between the market
value of the property before the taking and the market value after the taking. The only evidence
of the post-taking decrease in market value was given by the Wegners' two expert witnesses. 
Each witness testified to different amounts for the decrease in value as a result of the taking:
$97,894 and $99,000. The jury then returned a verdict of $30,000 as the amount of the decrease
in value. The court of appeals held that the evidence did not support the jury's verdict. The
Wegners also argued that they were entitled, as a matter of law, to damages in the amount of
$97,894, the lowest amount in evidence. The court refused to hold that the lowest amount in
evidence was the proper measure of the diminution in value. The court reasoned that, because
"the Wegners' other value witness testified to a higher figure, . . . we cannot conclude that the
lowest amount established the amount of damages as a matter of law." Wegner, 829 S.W.2d at
923 (emphasis added). 

 The State's argument that Wegner controls the outcome here is misguided. 
Although the facts of Wegner are very similar to the facts of the instant case, Wegner is
procedurally different from the instant case. Wegner concerned the ability of a court of appeals
to make a determination of fact as to the value of the property, and the instant case concerns the
ability of the trial court to make this type of determination. When the only question presented
on appeal concerns the legal sufficiency of the evidence, an appellate court does not have the
authority to resolve a question of fact. Wisdom v. Smith, 209 S.W.2d 164, 166 (Tex. 1948). In
Wegner, the appellate court refused to hold, as a matter of law, that the Wegners were entitled
to the lowest amount in evidence, because there was conflicting testimony as to the value of the
property. The appellate court refused to resolve this question of fact because it had no authority
to do so. Thus, Wegner is not controlling here.

 A trial court is allowed to render judgment notwithstanding the verdict and to
substitute its own judgment of the proper measure of damages, but only in certain specific
circumstances. Under the Texas Rules of Civil Procedure, a trial court may render judgment
notwithstanding the verdict only if a directed verdict would have been proper under the
circumstances of the case. Tex. R. Civ. P. 301. A directed verdict is proper when: (1) a defect
in the opponent's pleading makes it insufficient to support a judgment; (2) the evidence proves
conclusively the truth of fact propositions which, under substantive law, establish the right of the
movant, or negate the right of the opponent, to judgment; or (3) the evidence is insufficient to
raise an issue of fact as to one or more propositions which must be established for the opponent
to be entitled to judgment. City of San Benito v. Cantu, 831 S.W.2d 416, 423 (Tex. App.--Corpus
Christi 1992, no writ) (construing Tex. R. Civ. P. 268); Texas Employers Ins. Ass'n v. Duree,
798 S.W.2d 406, 408 (Tex. App.--Fort Worth 1990, writ denied) (same). Of these three
possibilities, only the second alternative could apply to the situation presented here.

 A directed verdict is not proper where the pleadings and the evidence raise factual
issues for the jury's determination. Hicks v. Matthews, 266 S.W.2d 846, 849 (Tex. 1954). A
judgment notwithstanding the verdict must be based on conclusive evidence which entitles the
moving party to judgment as a matter of law. Dittberner v. Bell, 558 S.W.2d 527, 531-32 (Tex.
Civ. App.--Amarillo 1977, writ ref'd n.r.e.). After our review of the record, we conclude that
the evidence did not conclusively establish that Huffstutler was entitled to a judgment of $310,000. 
Conflicting testimony was presented by Huffstutler's own witnesses as to the value of the property
on the date of taking. Because the witnesses for Huffstutler presented inconsistent testimony as
to value and because the State was prevented from offering any expert testimony concerning
value, it was improper for the trial court to conclude, as a matter of law, that the value of the
property was $310,000.

 Therefore, since the trial court incorrectly found that the evidence at trial
established as a matter of law that the correct amount of damages was $310,000, we sustain the
State's fourth point of error. Because we have sustained this point of error, we will not address
the State's first and second points of error concerning the exclusion of the State's value witness.


CONCLUSION


 Having sustained the State's fourth point of error, we reverse the judgment of the
trial court and remand the cause for a new trial. 



 Mack Kidd, Justice

Before Justices Powers, Jones and Kidd

Reversed and Remanded

Filed: March 9, 1994

Publish
1. The supreme court noted that "[b]oth in the trial court and on appeal, Brazos attacked the
trial court's substituted finding and judgment n.o.v. on only one ground: that the jury's finding
on post-taking value was supported by some evidence." Callejo, 755 S.W.2d at 75 n.1 (emphasis
in original).