**PARALLAX CORPORATION, N.V., Appellant,**

v.

**CITY OF EL PASO, Appellee.**

No. 08-93-00468-CV.

Court of Appeals of Texas, El Paso.

Oct. 5, 1995.

Rehearing Overruled Dec. 13, 1995.

88

Francis S. Ainsa, Jr., Robert A. Skipworth, Ainsa, Skipworth, Conde & Martinez, El Paso, for appellant.

David C. Caylor, City Attorney, El Paso, Daniel H. Hernandez, Assistant City Attorney, El Paso, Laura K. Norden, Assistant City Attorney, El Paso, for appellee.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

This is a statutory condemnation case. Appellant Parallax Corporation, N.V. ("Parallax") appeals the judgment of the County Court at Law No. 3 on a jury verdict awarding less than it received from the special commissioners. Parallax brings three points of error, asserting that: (1) no evidence supports the jury's finding of damages; (2) insufficient evidence supports the jury's finding of damages; and (3) the trial court erred by allowing cross-examination by the City on a hypothetical question concerning facts which were not in evidence. We affirm.

### SUMMARY OF THE EVIDENCE

Parallax originally purchased the real estate which is the subject of this dispute in 1978. The tract, originally comprised of 159.27 acres, is located near the intersection of Interstate 10 and Avenue of the Americas in east El Paso, but it contains no frontage on either major thoroughfare. Carlos Salas–Porras, managing director of Parallax, discovered in 1987 that the City of El Paso planned a flood control project that would impact the land. The discovery occurred during the pendency of a contract for sale of the land when the City would not change the zoning as required by that contract. The eventual condemnation of the subject real estate divided it into three parcels: (1) 82.25 acres condemned by the City for a ponding basin which became the Americas Basin; (2) 62.26 acres retained by Parallax to which there is no access; and (3) 14.76 acres retained by Parallax which has one access point. The special commissioners awarded Parallax $2,561,000 in damages. Parallax objected to the award and, following trial to a jury, the trial court entered judgment that Parallax was entitled to $895,702.50 for the parcel taken and $606,703.76 for the damages to the remainder parcels, for a total compensation of $1,502,406.20. Parallax attacks only the finding of the jury with regard to the value of the remainder parcels.

Salas–Porras testified that in his opinion, the entirety was worth $11,000,000, based on the contract that fell through because the City would not change the zoning. Eugenio Mesta and Tony Conde testified that the highest and best use of the land would be development for commercial, industrial, and residential use. David Etzold testified as an expert witness for Parallax that the entirety of the remainder had a value before the taking of $1.12 per square foot or a value of $3,757,590.[1] After the taking, Etzold calculated the damages to the 62.26 acre tract at 100 percent because the tract was completely landlocked. Given a post-taking value of zero, the damages to that tract could be quantified at $3,037,491. Etzold further testified that the 14.76 acre tract had a pre-taking value of $1.12 per square foot and a residual value post-taking of $140,240. Thus, damages to the smaller tract totaled $579,859. Total damages to the remainder predicated on Etzold's testimony equal $3,617,350. Etzold additionally testified concerning the comparable sales he utilized in determining the market value of the subject property. Six comparables were selected for similarity in the areas of proximity of location, size, topography, access, visibility, sales date, and similar intent of usage. The comparables varied in price per square foot between 60¢ and $1.25. Charles Osenbaugh, also an expert witness for Parallax, testified that the value of the remainder tracts before the tak-

---

1. The record reflects that there are 43,560 square feet in an acre. Thus, values may be determined on the basis of acreage × 43,560 × psf [price per square foot].

ing based upon 90¢ per square foot was $3,019,492. He calculated the post-taking value of the 62.26 acre tract at 10¢ per square foot for a value of $271,205 and the post-taking value of the 14.76 acre tract at 30¢ per square foot for a value of $192,884. Subtracting the total post-taking value of the two tracts from the pre-taking value, Osenbaugh quantified the damages to the remainder at $2,555,403. Osenbaugh predicated his opinion on six comparable sales which varied between 15¢ and 70¢ per square foot.[2] He admitted on cross-examination that the jury had sufficient information within his report to arrive at their own finding of fair market value by selecting a different price per square foot. Curtis Sellers testified as an expert witness for the City. Utilizing six comparables ranging from 10¢ to 73¢ per square foot, he began by applying 23¢ per square foot to the entire 159 acre tract.[3] He adjusted the value downward because all of the comparables had immediate access and water. Deducting $220,000 for the cost of roads, bridges, and water, he arrived at a value equivalent to 20¢ per square foot. Applying the 20¢ per square foot figure to the remainder tracts, he arrived at a pre-taking value of $672,000. He believed the post-taking value of the remainder to be zero, thus quantifying the remainder damages suffered by Parallax at $672,000.

All expert witnesses were subjected to rigorous cross-examination as to how they reached their opinions on the value of the land. Specifically, Etzold was cross-examined as to the location of comparable parcels on which he based his opinion, the selling price of the comparables, and the characteristics of the comparables such as frontages and improvements. Osenbaugh was cross-examined as to appraisal practice, the selling price of various comparables, and the characteristics of the various comparables such as frontages, improvements, location, and defects. Finally, Sellers was thoroughly cross-examined as to two prior appraisals of the land, the various comparables examined in all three appraisals, and the characteristics of the various comparables. The jury was bombarded with various prices per acre and prices per square foot from all three experts for both the land which is the subject of the litigation and the various comparable parcels. Significantly, Osenbaugh, past president of the Society of Real Estate Appraisers, testified that real estate appraisal is not an exact science and requires the exercise of personal judgment in using comparables to form an opinion as to the value of specific real estate. David Craig, past president of the American Institute of Real Estate Appraisers, agreed with Osenbaugh that appraisal was not an exact science.

### STANDARD OF REVIEW

█ In considering a legal sufficiency or "no evidence" point, an appellate court considers only the evidence which tends to support the jury's findings and disregards all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Worsham Steel Co. v. Arias,* 831 S.W.2d 81 (Tex.App.—El Paso 1992, no writ). If any probative evidence supports the jury's determination, it must be upheld. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (Tex.1951); *Neily v. Aaron,* 724 S.W.2d 908 (Tex.App.—Fort Worth 1987, no writ); *see generally* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex.L.Rev. 515 (1991).

█ A factual sufficiency point requires examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 244 S.W.2d at 660; *Worsham Steel Co.,* 831 S.W.2d at 81. The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Carrasco v. Goatcher,* 623 S.W.2d 769 (Tex.

---

2. The average price per square foot of the comparable sales utilized by Osenbaugh is 41¢. This is the hypothetical price per square foot utilized by the City in cross-examining Osenbaugh, the propriety of which is discussed below.

3. The sale at 10¢ per square foot involved the Resolution Trust Corporation and all parties agreed that it was below market value. The next lowest comparable had a price per square foot of 18¢.

App.—El Paso 1981, no writ). It is not within the province of this Court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951); *Reynolds v. Kessler*, 669 S.W.2d 801, 807 (Tex.App.—El Paso 1984, no writ). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Clark v. National Life & Accident Ins. Co.*, 145 Tex. 575, 200 S.W.2d 820, 821 (1947); *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131, 136 (Tex.App.—El Paso 1992, writ denied).

### FAILURE TO URGE MOTION TO STRIKE

 In Point of Error No. Three, Parallax complains of improper cross-examination of Osenbaugh. Specifically, Parallax asserts that the City posed a hypothetical question to Osenbaugh based on facts not in evidence. Osenbaugh was asked to calculate Parallax's compensation assuming a value of 41¢ per square foot. Several questions after Osenbaugh was asked to assume the figure, Parallax objected on the grounds that there was nothing in the evidence showing a 41¢ per square foot value. Even if we assume that Parallax's objection was timely, there is no indication in the record Parallax ever moved to strike the testimony already provided by Osenbaugh.[4] Merely urging an objection to testimony already elicited is insufficient to prevent the jury's consideration thereof or to prevent an appellate court's consideration of same in a sufficiency review. Therefore, any error posed by the testimony as to damages assuming the value not in evidence is waived by Parallax's failure to request that Osenbaugh's testimony be stricken. Tex.R.App.P. 52(a); *Hur v. City of Mesquite*, 893 S.W.2d 227, 231 (Tex.App.—Amarillo 1995, writ denied); *Prudential Ins. Co. Of America v. Uribe*, 595 S.W.2d 554, 564 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.); *City of*

*Denton v. Mathes*, 528 S.W.2d 625, 634 (Tex. Civ.App.—Fort Worth 1975, writ ref'd n.r.e.). Point of Error No. Three is overruled.

### DAMAGE FINDING WITHIN THE RANGE OF EXPERT TESTIMONY

Points of Error Nos. One and Two assert that the jury's finding of damages as to the land retained by Parallax is unsupported by legally or factually sufficient evidence.

#### Legal Sufficiency Challenge

 Parallax's motion for new trial argues only that the jury's finding is against the overwhelming weight and preponderance of the evidence. This can only be construed as a challenge to the factual sufficiency of the evidence underlying the jury's finding. While Tex.R.Civ.P. 324b does not expressly require a motion for new trial to complain of legal sufficiency in a jury trial, the Supreme Court has imposed just such a requirement if the error has not been otherwise preserved. *Salinas v. Fort Worth Cab & Baggage Co., Inc.*, 725 S.W.2d 701 (Tex.1987); *Aero Energy, Inc. v. Circle C Drilling Company*, 699 S.W.2d 821 (Tex.1985). As a prerequisite to a "no evidence" point of error on appeal, an appellant must have presented the complaint to the trial court by motion for instructed verdict, objection to the submission of the jury question, motion for judgment *non obstante veredicto*, motion to disregard the contested jury finding, or a motion for new trial. *Id.* at 823. The record before us reflects that the legal sufficiency complaint was not presented to the trial court and it is accordingly waived.

Even if we construe the challenge contained in the motion for new trial as sufficient to preserve a legal sufficiency challenge to the finding, the challenge would fail because Sellers testified that predicated on a value of 20¢ per square foot, Parallax suffered $672,000 in damages to the parcels it

---

4. The record reflects that counsel for Parallax noted he was not objecting to the hypothetical question to allow counsel for the City the opportunity to prove the facts not already in evidence. He specifically noted that if the prove-up were not made, he would move to have all of the

testimony stricken at the end of the trial. Although an objection to the hypothetical was made thereafter and a running objection granted by the trial court, no motion to strike Osenbaugh's testimony was ever urged.

retained. Given this testimony, combined with his elaboration on cross-examination as to the basis of his opinion, other evidence supporting a lesser price per square foot, and evidence that appraisals are not exact in nature, the jury's finding of $606,703.76 is supported by more than a scintilla of evidence.

### Factual Sufficiency Challenge

 The parties agree that the controlling precedent is *Callejo v. Brazos Electric Power Cooperative, Inc.*, 755 S.W.2d 73 (Tex. 1988). *Callejo* held that a jury may not "blend" expert testimony and other evidence in arriving at compensation in a condemnation case. *Id.* at 75. The *Callejo* Court reaffirmed the rule that expert testimony is *not binding* on the jury, although the jury must stay within the evidence when making its determination. *Callejo*, 755 S.W.2d at 75. The conflicting expert testimony and jury findings from *Callejo* were as follows:

| | Power Company | Callejo | Jury |
|---|---|---|---|
| Value Before Taking | $67,082 | $729,256 or $643,987.20 | $456,161 |
| Value After Taking | $33,541 | $0 | $364,928.80 |
| Damages | $33,541 | $729,256 or $643,987.20 | $91,232.20 |

*Id.* at 74. The *Callejo* trial court disregarded the jury's finding of $364,928.80 and substituted its own finding of $33,541. The Dallas Court of Appeals reversed and rendered on the jury verdict, holding that the jury finding was sustainable if all the evidence were "blended." *Brazos Electric Power Cooperative, Inc. v. Callejo*, 745 S.W.2d 70, 73 (Tex. App.—Dallas 1988), *reversed*, 755 S.W.2d 73 (Tex.1988). The Supreme Court of Texas reversed the Court of Appeals and affirmed the judgment of the trial court, noting the difficulty of submitting separate jury questions in a condemnation proceeding. Since the measure of damages in a condemnation proceeding is the difference in the market value of the land immediately before and immediately after the taking, the court concluded that future condemnation cases should be subject to broad-form submission. *Id.* at 77. This mandate was reiterated in *Westgate, Ltd. v. State*, 843 S.W.2d 448, 457 (Tex. 1992), where the Court noted that two jury questions should be submitted: (1) the market value of the land taken, considered as severed land; and (2) damages to the remainder, accompanied by an instruction that such damages should be determined by considering the difference between the remainder's pre- and post-taking value.[5] The improper "blending" which gave rise to the reversal in *Callejo* occurred when the Court of Appeals considered testimony relating to the value of the land before the taking as bearing on the sufficiency of the evidence concerning the value of the land after the taking. In short, evidence of pre-taking value may not be "blended" with evidence of post-taking value in order to create the applicable "range" of testimony by which to gauge the sufficiency of the evidence. Without citing other evidence, the Supreme Court held that the highlighted testimony was legally insufficient to support the jury's findings. *Callejo*, 755 S.W.2d at 75.

 Parallax further cites *State v. Huffstutler*, 871 S.W.2d 955 (Tex.App.—Austin 1994, no writ) for the proposition that the jury can find no lower amount than that testified to by an expert. *Id.* at 959. *Huffstutler* in turn relies on *Tenngasco Gas Gathering Co. v. Bates*, 645 S.W.2d 496, 498 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.). *Tenngasco* held that the jury could set compensation in a condemnation case at any point within the extremes testified to by the experts by *blending the testimony.* *Id.* at 498. This is the very practice condemned by

---

5. The charge in the instant cause complies with the directives in *Callejo* and *Westgate* and no complaint on appeal is presented.

the *Callejo* Court. Furthermore, if the jury cannot go below the expert testimony, then the expert testimony *is binding*, another theory rejected by *Callejo*. We note that *Callejo* and *Huffstutler* both cite to the absence of evidence of value other than expert testimony. We have before us, however, detailed information about various comparables and the prices at which it sold, locations, condition, and testimony from two past presidents of national appraisal organizations that appraisals are inexact. Therefore, we do not read *Callejo, Huffstutler*, or *Tenngasco* as necessarily requiring reversal where the jury makes findings below the lowest expert testimony as to damages provided the record reveals additional evidence by which the jury could compute the value. By way of example, suppose a single expert testified that in his opinion, damages to a ten-acre tract totaled $217,800 based upon a value of 50¢ per square foot. Further suppose on cross-examination, the witness admitted that he had utilized ten comparables; all of the comparables were predicated on sales involving a value of 25¢ per square foot; and that by utilizing the latter figure, the acreage in question would be damaged in the amount of $108,900. Parallax would argue that the jury could not return a verdict of less than $217,800, although the evidence would justify using a different value per square foot to reach damages of one-half that sum. This would be true because the expert testified as to his opinion of value based upon adjustments to the comparables and the jury is not free to substitute its judgment as to factors involved in making those adjustments. We decline to adopt that argument.

■ *Callejo* states: (1) the expert evidence of value cannot be blended; (2) the expert evidence is not binding on the jury; and (3) the jury cannot go outside the evidence. *Callejo*, 755 S.W.2d at 75. Therefore, it appears to us that the expert's testimony as to damages is merely the beginning point rather than the ending point in examining the sufficiency of the evidence underlying the jury's finding. The other evidence of value elicited on direct and cross-examination, evidence of different appraisals of the same property, evidence that appraisals are inexact, and evidence that appraisals involve the exercise of judgment by an individual expand from the beginning point, creating a "range" in which the finding will be supported by some evidence, and therefore immune to a legal sufficiency attack. The jury finding will survive a factual sufficiency attack if it falls within a narrower "range" of the expert testimony.

Viewing the record as a whole, there is sufficient evidence underlying the jury's finding of damages in this case. Recognizing that we may not blend the experts' testimony of pre-taking value per square foot with their opinions of post-taking value per square foot, we note that three comparables of pre-taking value per square foot were lower than Sellers' selection of 20¢. Even assuming that we ought not consider as a valid comparison the Resolution Trust Corporation sale at 10¢, we are left with sales involving 18¢ and 15¢ respectively. Applying the formula utilized by all three of the experts, the 18¢ price results in damages to the remainder of $603,898 while the 15¢ price results in an award of $503,249. The jury verdict of $606,703.76 exceeds both calculations and thus falls within the range of testimony.

■ Parallax's argument that Sellers' testimony as to damages acts as a floor for the jury finding is unsound in policy. Juries quite often reach a different answer from what the parties might agree is the "right" one. If we adopted Parallax's argument, then every time a jury "missed it," however close to the mark their finding might be, we would be required to remand for new trial, clogging the trial courts with the same case two or perhaps three times. For example, if an expert testified to a value of $200,000 and the jury found a value of $195,000, the verdict would be below the "damage floor" and subject to a factual insufficiency challenge. Yet it could not be said that the verdict was "against the great weight and preponderance of the evidence." Furthermore, the argument quite clearly conflicts with the rule that expert evidence is non-binding on the jury. Sellers testified that Parallax suffered $672,000 in damages; the jury's finding of $606,703.76 is not so far from the figure testified to as to be unsupported by factually suffi-

cient evidence, in light of the entire record. We conclude that in reviewing the record in a condemnation suit, we must determine if there has been a significant departure by the jury from the range of expert testimony presented at trial. *Pedernales Elec. Co-op, Inc. v. Baker,* 685 S.W.2d 459 (Tex.App.—Austin 1985, no writ); *Leiber v. Texas Municipal Power Agency,* 667 S.W.2d 206, 209 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.).[6] Having found no significant departure, Points of Error Nos. One and Two are overruled. Accordingly, we affirm.

6. We recognize that both *Baker* and *Leiber* were disapproved in *Callejo* "to the extent they may conflict with this opinion." Because the opinion precludes the blending of testimony on separate issues of valuation and because both *Baker* and *Leiber* contain tacit approval of the blending of testimony, we limit the disapproval to that issue. We do not conclude that *Callejo* overrules the "significant departure" test.