TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00190-CV






Guadalupe-Blanco River Authority, Appellant



v.



Marvin Kraft, Sr., Appellee






FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY,


NO. 6082-C, HONORABLE LINDA A. RODRIGUEZ, JUDGE PRESIDING













DISSENTING OPINION






 

 I agree with the majority that (1) "expert opinion testimony acquires special
significance" in eminent domain cases, and (2) whether the trial court properly admitted the
expert's testimony is a matter within the trial court's discretion and will not be disturbed absent
an abuse of discretion. See E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 558
(Tex. 1995). For these reasons and because the landowner did not carry his burden of establishing
the reliability of the expert's testimony, I respectfully dissent. See Gammill v. Jack Williams
Chevrolet, Inc., 972 S.W.2d 713, 726 (Tex. 1998). 

 The landowner's expert evidence should be measured by the standard articulated
in Gammill v. Jack Williams Chevrolet, Inc.: Does the expert's opinion comport with applicable

professional standards outside the courtroom, and does it have a reliable basis in the knowledge
and experience of the discipline? Id. at 725-26. On appeal, the landowner does not argue that he
established the reliability of the expert's opinion or his underlying methodology. He argues
instead that "[t]here is very little authority in Texas or elsewhere applying [Daubert v. Merrell
Dow Pharmaceuticals., Inc.] to opinion testimony as to value in an eminent domain case" and then
asserts in a summary fashion that he employed a comparable sales approach. That the expert had
a theory of valuation does not make it admissible without a further showing. "[W]hether an
expert's testimony is based on 'scientific, technical or other specialized knowledge,' Daubert and
Rule 702 demand that the district court evaluate the methods, analysis, and principles relied upon
in reaching the opinion." Id. at 725.

 This case, in fact, demonstrates the rationale for requiring a showing of reliability
and relevance for expert testimony to be admissible under Rule 702. See Robinson, 923 S.W.2d
at 553. The landowner's real estate appraiser was his only witness. The landowner did not
testify. The expert testified that he valued the property using a sales comparison approach, but
he testified that there were no comparable sales. Because the easement at issue was a strip of land
30 feet wide and 4600 feet long running diagonally across Kraft's property that did not constitute
an economic unit, the expert reconfigured the property for purposes of his analysis to form a
hypothetical 3.21-acre tract that was rectangular in shape. He also valued the easement by
assuming a different location for the tract. Although the strip of land at its closest point is
approximately 3900 feet from State Highway 123, a four-lane highway connecting San Marcos and
Seguin, the expert's valuation posited that the land adjoined the highway. 

 It may be that there is some basis for reconfiguring and moving the property for the
purposes of valuation. Certainly, real estate appraisal is not an exact science and requires the
exercise of personal judgment. See Parallax Corp., N.V. v. City of El Paso, 910 S.W.2d 86, 89
(Tex. App.--El Paso 1995, writ denied). But here the landowner fails entirely to demonstrate that
the underlying methodology of his theory is reliable under the Daubert-Robinson-Gammill factors. 
At trial, when counsel for appellant objected to "the failure of this witness's methodology to meet
the reliability standards as articulated by the Supreme Court in Gammill versus Jack William
Chevrolet as applying to all expert testimony," counsel for the landowner complained that the
objection was incomprehensible. Despite cross-examination of the expert by appellant's counsel
challenging the appraiser's theory, the landowner offered no evidence to show his expert's opinion
or its underlying methodology met any aspect of the Gammill standards. Failing to acknowledge
that it was his burden to establish reliability, the landowner's counsel queried in his brief on
appeal: "Wherein is the appraisal testimony 'unreliable?' What was wrong with the
'methodology?' The objection doesn't say. Both the trial court and opposing counsel are left to
guess."

 To be admissible, an expert must be qualified, and his opinion must be relevant and
have a reliable basis. Gammill, 972 S.W.2d at 726. The burden to establish reliability is on the
proponent of the evidence. Id. at 718-19. "Once the party opposing the evidence objects, the
proponent bears the burden of demonstrating its admissibility." Robinson, 923 S.W.2d at 557.
Among the non-exclusive factors that may be considered in determining the reliability of the basis
of the expert's opinion are: (1) whether the theory can and has been tested; (2) whether the theory
has been subjected to peer review; and (3) the general acceptance of the theory in the relevant
community. Gammill, 972 S.W.2d at 720; Robinson, 923 S.W.2d at 557. The trial court's
discretion extends to determining which of the Daubert-Robinson-Gammill factors reasonably
measures whether an expert's opinion is reliable, and whether other factors might apply. Kumho
Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999).

 When the Robinson factors cannot be applied to the testimony at issue, the trial
court must still satisfy Rule 702's reliability requirement. All expert testimony, regardless of
whether it can be analyzed using the specific factors set forth in Robinson, must satisfy the
Robinson standard for reliability and relevance. Gammill, 972 S.W.2d at 724, 727. The test in
such cases is whether "'there is simply too great an analytical gap between the data and the opinion
proffered.'" Id. at 727 (quoting General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)). In
applying Gammill to expert testimony based upon experience or other specialized knowledge,
Texas courts have conducted detailed analyses of the basis for the expert's opinions and how those
opinions are tied to the facts of the particular case. See, e.g., City of Harlingen v. Sharboneau,
1 S.W.3d 282, 284-88 (Tex. App.--Corpus Christi 1999, pet. granted) (applying Robinson to the
expert opinion of a real estate appraiser); Olin Corp. v. Smith, 990 S.W.2d 789, 795-98 (Tex.
App.--Austin 1999, pet. denied). To the extent the majority relies on pre-Daubert cases, absent
some type of scrutiny into the basis for the conclusions drawn in those cases, I would find them
inapposite.

 The case of City of Harlingen v. Sharboneau cited by the majority is instructive. 
While it may be readily distinguished, it also supports the exclusion of the evidence at issue here. 
In that case, beyond the expert's qualifications, the court received into evidence a written report
which described "at some length" the expert's method and its general utility in the appraisal
process. Sharboneau, 1 S.W.3d at 285. The study included an initial examination of the
demographic and economic prospects for the Lower Rio Grande Valley where the tract was
located. Id. The appraiser then examined the feasibility of subdividing the tract and further
described his methodology. Id. at 285-86. Importantly, the appraiser described in detail the basis
for reaching each conclusion. Id. at 286. Having established the use of the property, the
appraiser then undertook to appraise the value of the land when put to that use. Id. He further
described the very extensive valuation process he undertook. Id. at 286-88. He estimated general
overhead, sales expenses, sales commissions associated with developing the land, and the
developer's profit. Id. at 288. After studying past experiences of local developers, he developed
a formula derived from his methodology. Id. He provided the resulting calculation to the court. 
Finding the trial court did not abuse its discretion in admitting the testimony, the court concluded: 
"Our review of [the appraiser]'s report demonstrates that [he] used a quantifiable process which
gives rise to the conclusion reached." Id.

 In contrast, the expert here provided no report or other evidence to address the
"analytical gap" between the data offered and his conclusions. Nor did he attempt to address any
of the reliability factors. His testimony presents precisely the type of expert testimony lacking any
indicia of reliability that the supreme court sought to address in Merrell Dow Pharmaceuticals,
Inc. v. Havner and Gammill. "[I]t is not so simply because 'an expert says it is so.'" Gammill, 972
S.W.2d at 726; Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 712 (Tex. 1997).

 Whether evidence relating to comparable sales is admissible in Texas courts is not
the issue here. That the landowner offered no evidence relating to the Daubert-Robinson-Gammill
factors, thus failing to meet any of the flexible factors required by case law and Rule 702, is the
issue. I would hold that the landowner, as the proponent of the evidence, failed to carry his
burden with the mere assertion that he used a comparable sales approach and citation to two
noncomparable properties. It is certainly curious that the expert fails to cite to any "comparables"
involving easements. Condemnation cases dealing with pipeline easements are hardly rare or
unusual. They are, however, distinct from sales of economic units of property located on
highways adjoining commercial or residential land. It is precisely for that reason that they are
relevant.

 Parties may challenge opinion testimony on the grounds that it is unreliable, and
therefore "no evidence." See Havner, 953 S.W.2d at 711-14. A "no-evidence" challenge will be
sustained: (1) when there is a complete absence of evidence of a vital fact; (2) when rules of law
or evidence preclude according weight to the only evidence offered to prove a vital fact; (3) when
the evidence offered to prove a vital fact is no more than a scintilla; or (4) when the evidence
conclusively establishes the opposite of the vital fact. Id. Appellant's challenge to the expert's
testimony relies on the second "no-evidence" category. By challenging the reliability of the
expert's testimony, and therefore its admissibility, appellant contends the testimony is "no
evidence" because a "rule of law or evidence," specifically Rule 702, precludes giving the evidence
any weight. Id. at 711. I would agree.

 Because the landowner failed to carry his minimal burden of establishing the
prerequisites of Rule 702, I would hold that the trial court erred by overruling appellant's
objections that the expert's testimony was inadmissible because it was unreliable. I would find
that because the landowner failed to make any showing of reliability, the trial court abused its
discretion by acting without reference to well-established principles guiding the admissibility of
expert testimony. This error harmed appellant because the expert's testimony is the only evidence
that supports the jury's damage award. See Tex. R. App. P. 44.1(a).

 I would sustain appellant's issues and reverse the judgment of the trial court,
remanding the cause for entry of judgment in favor of the landowner in the amount of $7630.



 
 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Filed: January 11, 2001

Publish



h described "at some length" the expert's method and its general utility in the appraisal
process. Sharboneau, 1 S.W.3d at 285. The study included an initial examination of the
demographic and economic prospects for the Lower Rio Grande Valley where the tract was
located. Id. The appraiser then examined the feasibility of subdividing the tract and further
described his methodology. Id. at 285-86. Importantly, the appraiser described in detail the basis
for reaching each conclusion. Id. at 286. Having established the use of the property, the
appraiser then undertook to appraise the value of the land when put to that use. Id. He further
described the very extensive valuation process he undertook. Id. at 286-88. He estimated general
overhead, sales expenses, sales commissions associated with developing the land, and the
developer's profit. Id. at 288. After studying past experiences of local developers, he developed
a formula derived from his methodology. Id. He provided the resulting calculation to the court. 
Finding the trial court did not abuse its discretion in admitting the testimony, the court concluded: 
"Our review of [the appraiser]'s report demonstrates that [he] used a quantifiable process which
gives rise to the conclusion reached." Id.

 In contrast, the expert here provided no report or other evidence to address the
"analytical gap" between the data offered and his conclusions. Nor did he attempt to address any
of the reliability