RUSK COUNTY ELECTRIC COOPERA-
TIVE, INC., Appellant,

v.

T. H. FLANAGAN et ux., Appellees.

No. 930.

Court of Civil Appeals of Texas,
Tyler.

June 24, 1976.
Rehearing Denied July 15, 1976.

A. H. Waldrop, Waldrop, Shaw & Minton, Henderson, for appellant.

Blake Bailey, Wellborn & Houston, Henderson, for appellees.

DUNAGAN, Chief Justice.

This suit was instituted by T. H. and Darlene Flanagan against the Rusk County Electric Cooperative, Inc., for damages resulting from the termination of electricity after the nonpayment of a $2.02 bill. The judgment, based upon the jury's answers to Special Issues, awarded the Flanagans $250 for actual damages and $1,500 for attorneys' fees. The Electric Cooperative duly perfected its appeal. We affirm the award of actual damages and reverse that portion of the judgment awarding attorneys' fees.

The Electric Cooperative normally bills its members prior to the 15th of each month for electricity consumed in a previous time period. The bill apparently contains a statement that failure to pay before the 15th will result in a specified penalty charge and that failure to pay before the 25th will result in termination of the member's electric power.

The Flanagans' power was cut off for nonpayment of a bill for part of the electricity consumed in September, 1973. The Flanagans received a bill for $8.10 in October and paid that bill with a check dated October 14th. That bill was for the estimated amount of electricity consumed in September. There is some evidence that an exact bill was not supplied because the Electric Cooperative was in the process of switching to computerized billing. At any rate, an adjustment bill was mailed to the Flanagans on November 19th and was discovered by them on Saturday, November 24th. This bill charged the Flanagans $10.12 for consumption through October 1st, credited them with the $8.10 payment, and showed the amount due as $2.02. They mailed a check for $2.10 ($2.02 plus an $.08 late penalty charge) on Monday, November 26th, in a properly addressed and stamped envelope. The electricity was cut off at the Flanagans' home on November 28th. The Flanagans' check was received and deposited by the Electric Cooperative on Monday, December 3rd.

■ The Electric Cooperative contends that the termination of power was justified by the Flanagans' failure to pay the $2.02 adjustment bill by November 25th.[1] We disagree.

The provision for payment by the 25th of a given month applied to regular bills received before the 15th of that month and not to an adjustment bill mailed on the 19th. The agreement between the Flanagans and the Electric Cooperative contained no time provision for payment of adjustment bills.

■ Generally, where no time of performance is stated in a contract, the law will imply a reasonable time. *Moore v. Dilworth*, 142 Tex. 538, 179 S.W.2d 940 (1944). Failure to specify a time for payment for goods or services will render the debt payable within a reasonable time after performance. *Beall v. Hardwicke-Etter Co.*, 460 S.W.2d 516, 519 (Tex.Civ.App.—Waco 1970, writ dism'd). There is often an element of uncertainty in the determination of the length of a "reasonable time" in a particular case. 1 Corbin on Contracts, Sec-

---

1. The Flanagans neither received nor paid a bill for electricity consumed in October. The record indicates that nonpayment for October power was the initial reason for the cut off. This reason, however, was not urged in the Trial Court and is not urged on appeal.

tion 96 at 414. What is "reasonable time" must be determined by the circumstances of each case. *Houston County v. Leo L. Landauer & Associates, Inc.*, 424 S.W.2d 458, 463 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.); *Hall v. Hall*, 158 Tex. 95, 308 S.W.2d 12, 16 (1957).

■ When a contract for the sale of goods or rendition of services fails to fix a time for payment, the gap is readily supplied from general usage or the previous course of dealing. In the absence of an agreement or course of dealing to the contrary, payment is due upon delivery. 1 Corbin on Contracts, Section 96 at 414–415; *Erb-Springall Co. v. Pittsburg Plate Glass Co.*, 101 S.W. 1165 (Tex.Civ.App.—1907, writ ref'd). The previous course of dealing between the Flanagans and the Electric Cooperative did not require payment upon delivery but rather deferred the termination date for at least two weeks after the bills were mailed. We hold that a reasonable time for the payment of the adjustment bill in this case was two weeks after the Electric Cooperative mailed that bill. *See Beall v. Hardwicke-Etter Co.*, supra.[2]

It is undisputed that the cut off of the Flanagans' electricity occurred before the expiration of this two-week period. In fact, the Electric Cooperative deposited the Flanagans' payment on the last day of that period. It must be concluded that the termination of electrical power on November 28th was wrongful.

■ Actual damages may be recovered for the wrongful termination of electricity. *See Southwestern Gas & Electric Co. v. Stanley*, 123 Tex. 157, 70 S.W.2d 413 (1934). We affirm that portion of the judgment awarding actual damages and turn to the award of attorneys' fees.

An attorneys' fee of $1,500 was awarded under the Debt Collection Chapter of the Consumer Protection Act, Tex.Rev.Civ.Stat. Ann., art. 5069–11.01 *et seq.* (Supp.1976). Article 11.10 provides that any person may maintain an action for actual damages sus-

tained as a result of a violation of this act; a person who successfully maintains such an action shall be awarded reasonable attorneys' fees.

The Flanagans contend that the Electric Cooperative used an "unfair means" of attempting to collect a debt and thus violated Article 11.04(b). This Article prohibits any attempt to collect a charge incidental to the obligation unless such charge is expressly authorized by the agreement creating the obligation. The jury found that the Electric Cooperative attempted to collect extra and unusual charges before reconnecting the power.

The record shows that Mrs. Flanagan met with Mr. Angus Mims of the Electric Cooperative on December 1st. She protested the termination on the ground that they had paid all their bills. Mr. Mims testified that he initially thought that Mrs. Flanagan was correct but that an investigation indicated that the Flanagans were behind on their payments. Mr. Mims offered to reconnect the power immediately upon the payment of $26.52. This figure was the total of $2.10 for the balance of September, $9.71 for October, $9.71 for November and $5.00 for a nonpayment disconnect fee. Mrs. Flanagan refused this offer because she did not agree that they were behind on their payments.

■ Even if this offer was an attempt to collect an extra and unauthorized charge incidental to an obligation, we cannot agree that the recovery of an attorneys' fee was justified. Attorneys' fees are recoverable under the Debt Collection Act only in an action "for actual damages sustained as a result of a violation of this Act." Article 11.10, supra. The Flanagans recovered actual damages for the spoilage of food in their freezer and the loss of the use of their home. These damages, however, were clearly not the result of any unreasonable collection efforts. These damages resulted from the wrongful termination of electricity. Article 11.10 is, by its own terms, inapplicable.

---

**2.** Although we base this holding upon the common law relating to contracts, we note that the

same result could be reached under Tex.Bus. & Comm.Code Ann. Section 2.310(4) (1968).

The portion of the Trial Court's judgment awarding actual damages is affirmed; the portion of the judgment awarding the attorneys' fee is reversed and judgment is here rendered that the Electric Cooperative is not liable for the attorneys' fee.