# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00060-CV

**Johnson Savage, Inc. d/b/a Precision Tune, Appellant**

**v.**

**Steve Fehrenkamp, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. GN202573, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Johnson Savage, Inc. d/b/a Precision Tune ("Precision Tune") appeals from a judgment awarding appellee Steve Fehrenkamp $4,806.11 in compensatory damages and $38,000 in attorneys' fees based on the jury's finding that Precision Tune violated the Texas Debt Collection Practices Act.[1]  The jury found "0" damages for the violation, but on Fehrenkamp's motion for judgment notwithstanding the verdict, the district court disregarded eleven of the negative damages findings and substituted its own affirmative damages findings.  We will reverse the district court judgment and render judgment in Precision Tune's favor.

---

[1]  Tex. Fin. Code Ann. §§ 392.001-.404 (West 2006).

**FACTUAL AND PROCEDURAL BACKGROUND**

On February 16, 2002, Fehrenkamp took his 1992 Pathfinder to Precision Tune, an auto repair business, for an oil change. Four days later, on February 20, the Pathfinder's engine failed. Fehrenkamp had the vehicle towed to another auto repair shop, where a mechanic determined that the engine had seized up due to a lack of oil and noted the absence of the oil pan's drain plug. Fehrenkamp informed Precision Tune of the engine failure and suspected cause. Precision Tune had the vehicle towed to its shop and, on February 25, made arrangements for a rental car for Fehrenkamp. Precision Tune's president, Mike Rouse, inspected the Pathfinder and concluded that the engine had failed due to a broken rod, not for lack of oil. A second opinion from an independent engineer confirmed Rouse's conclusion. On March 9, Precision Tune informed Fehrenkamp that it would not accept responsibility for the engine failure and asked Fehrenkamp to return the rental car and remove the Pathfinder from the shop. Fehrenkamp had the vehicle towed to his house. On March 22, Fehrenkamp had it towed to a Nissan dealership for a repair estimate. Fehrenkamp obtained a second estimate from yet another repair shop, which eventually completed the engine repair on or about April 25.

Meanwhile, on March 28, Precision Tune sent Fehrenkamp a letter requesting reimbursement for $1,143 in expenses it had incurred for towing and for the rental car. On April 11, Rouse called the Fehrenkamp house and left the following message on the answering machine:

> Yes, this is Mike Rouse at Precision Tune. I know you've been in receipt of my letter for ten days now. I have not heard from you before. We—we have to proceed legally. Just wanted to know if—if

> you had planned to pay us that—the amount you owe us for the incidentals involved in your vehicle. I will, I guess, wait until tomorrow before I file charges. Thank you, sir.

The next day, Fehrenkamp's attorney sent a letter to Rouse stating that Precision Tune's actions constituted violations of the Texas Deceptive Trade Practices–Consumer Protection Act[2] and the Texas Debt Collection Practices Act, and demanding that Precision Tune pay him the cost to repair the engine as well as compensation for his lost time and inconvenience. Precision Tune did not respond to the demand, and Fehrenkamp subsequently filed this suit alleging causes of action for violations of the debt collection practices act, the deceptive trade practices–consumer protection act, fraud, and negligence.

After a two-day trial, the district court submitted to the jury a charge consisting of 35 questions covering the four causes of action and including several damages questions. The jury answered two of the liability questions affirmatively, finding that (1) Precision Tune "threatened to file a charge, complaint or criminal action against Steve Fehrenkamp when Steve Fehrenkamp had not violated a criminal law" (Question 1); and (2) Precision Tune's negligence "proximately caused the occurrence or injury in question" (Question 31). However, the jury answered all the associated damages questions negatively, finding "0" damages in answer to each. The jury failed to find additional violations of the debt collection practices act beyond the threat, failed to find any violations of the deceptive trade practices–consumer protection act, and failed to find fraud. Finally, the jury awarded zero dollars in attorneys' fees.

---

[2] Tex. Bus. & Com. Code Ann. §§ 17.46-.63 (West 2002 & Supp. 2008).

3

Precision Tune filed a motion for entry of judgment, which the district court denied. Fehrenkamp filed a motion requesting that the district court disregard thirteen of the seventeen jury findings regarding damages arising from the debt collection practices act violation, and asking the court to substitute affirmative damage findings in their place. Fehrenkamp did not challenge the "0" damages findings associated with the affirmative finding of negligence. The district court granted Fehrenkamp's request as to eleven negative damage findings—seven addressing compensatory damages resulting from Precision Tune's conduct in violation of the debt collection practices act and four relating to attorneys' fees. The district court signed a judgment awarding Fehrenkamp $4,806.11 in compensatory damages and $38,000 in attorneys' fees. In three issues, Precision Tune asserts on appeal that the district court erred by (1) awarding damages that did not result from its violation of the debt collection practices act; (2) denying Precision Tune's motion for entry of judgment based on the jury verdict finding zero damages; and (3) awarding attorneys' fees without a finding of compensatory damages resulting from violations of the debt collection practices act.

**STANDARD OF REVIEW**

A motion for judgment notwithstanding the verdict should be granted only when the evidence is conclusive and one party is entitled to recover as a matter of law, or when a legal principle precludes recovery. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex. 1990). A district court may disregard any jury finding on a question that has no support in the evidence. Tex. R. Civ. P. 301. The district court may disregard a jury's verdict and render judgment notwithstanding the verdict if no evidence supports the jury's findings or if a directed verdict would

4

have been proper. *See Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Brown v. Bank of Galveston*, 963 S.W.2d 511, 513 (Tex. 1998). To determine whether the district court erred in rendering judgment notwithstanding the verdict, we review all evidence in a light most favorable to the verdict, indulging every reasonable inference in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 821 (Tex. 2005). The jury's findings must not be disturbed if there is any evidence of probative value to support them. *International Armament Corp. v. King*, 686 S.W.2d 595, 597 (Tex. 1985). Furthermore, the district court may render judgment notwithstanding the verdict *and* substitute its own judgment of the proper measure of damages only if the evidence proves those damages conclusively. *State v. Huffstutler*, 871 S.W.2d 955, 960-61 (Tex. App.—Austin 1994, no writ).

## DISCUSSION

### Compensatory Damages Award

The parties agree that the jury's finding, in answer to Question 1, of a violation of the debt collection practices act was based solely on uncontroverted evidence of the April 11 phone call wherein Rouse, Precision Tune's president, threatened to "file charges" against Fehrenkamp. Having answered Question 1 affirmatively, the jury was required to answer Questions 2 and 9, the damages questions. Question 2 asked the jury, "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Steve Fehrenkamp for his damages, if any, *which resulted from the conduct* you found to exist in Question 1?" (Emphasis added.) There were four separate categories of damages for the jury to consider:

5

2(a)  the value of time Fehrenkamp spent to prove he did not owe any debt to Precision Tune;

2(b)  the expenses incurred by Fehrenkamp in having the Pathfinder towed on March 9, 2002;

2(c)  Fehrenkamp's past mental anguish; and

2(d)  Fehrenkamp's mental anguish that he may sustain in the future.

Question 9 asked the jury, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Steve Fehrenkamp for his damages, if any, *that resulted from such conduct*?" (Emphasis added.)[3]  For this question, there were nine separate categories of damages for the jury to consider:

9(a)  the cost to restore the vehicle to the condition it was in before the February 16, 2002 oil change;

9(b)  loss of use of the vehicle;

9(c)  cost of replacement of the engine and related repairs;

9(d)  cost of the repair estimate from Southpoint Nissan;

9(e)  cost of the tow from Austin High School to Jimmy's Top Tech and from Precision Tune to the Fehrenkamp home;

9(f)  cost to Fehrenkamp of substitute transportation;

9(g)  cost of the February 16, 2002 oil change;

---

[3] Question 9 was conditioned on an affirmative answer to any of Questions 1, 3, or 5.  The jury answered "No" to Questions 3 and 5, and answered "Yes" to Question 1, which was based on Rouse's April 11 phone call.  Accordingly, the phrase "such conduct" in Question 9 necessarily referred to that phone call.

6

9(h)    value of time Fehrenkamp lost from work to address damage
        to the vehicle; and

9(i)    Fehrenkamp's past mental anguish

The jury awarded zero damages for each of the separate categories in Questions 2 and 9 of the charge. Precision Tune filed a motion to render judgment on the verdict, which the district court denied. Fehrenkamp filed a motion to disregard certain jury findings and render judgment in his favor, which the district court granted in part.

In his motion, Fehrenkamp contended that there was no evidence to support the jury's answer of zero to nine Questions: 2(a), 2(b), 9(a), 9(b), 9(c), 9(d), 9(e), 9(g), and 9(h). He asked the court to disregard these findings and substitute its own affirmative findings as to damages in amounts Fehrenkamp argued were conclusively proven at trial.[4] The district court granted the motion as to seven of the nine findings—2(b), 9(a), 9(b), 9(c), 9(d), 9(e), and 9(g)—and for each finding substituted a damages figure in place of the zero damages found by the jury.[5] Because findings 9(a) (cost to restore vehicle to condition before oil change) and 9(c) (cost of replacement of the engine and related repairs) were cumulative, Fehrenkamp made an election to recover damages under finding 9(a); as a result, finding 9(c) is not part of the judgment.

---

[4] Fehrenkamp did not ask the district court to disregard findings 2(c) (past mental anguish), 2(d) (future mental anguish), 9(f) (cost of substitute transportation), or 9(i) (past mental anguish).

[5] The district court declined to disregard findings 2(a) (value of time Fehrenkamp spent proving he was not indebted to Precision Tune), and 9(h) (value of time Fehrenkamp lost from work to address the damage to the vehicle). Fehrenkamp did not bring his own appeal to challenge the court's denial of this requested relief.

7

In its first issue, Precision Tune complains that the district court erred by rendering a judgment awarding Fehrenkamp compensation for damages that *could not have resulted* from the conduct the jury found to violate the debt collection practices act. Precision Tune argues that the damages substituted by the district court were improper because they either (1) accrued or were incurred before April 11, the date of the phone call making the threat to file charges that the parties agree constitutes the debt collection practices act violation; or (2) did not emanate from the threat contained in the call, but rather were caused by the damage to the vehicle itself, which also occurred before April 11. We agree. Four of the substituted damages findings compensated Fehrenkamp for damages incurred before the April 11 threat even occurred and could not in any way have resulted from that threat. These are findings 2(b) (cost of tow on March 9 from Precision Tune to the Fehrenkamp residence); 9(d) (cost of repair estimate done at the Nissan dealership on or about March 22); 9(e) (cost of two tows, one occurring on February 20 from Austin High School to a repair shop and the other occurring on March 9 from Precision Tune to the Fehrenkamp residence);[6] and 9(g) (cost of the February 16 oil change). Their temporal relationship to the April 11 phone call alone compels the conclusion that these damages could not have resulted from any violation of the debt collection practices act contained in that call. With respect to the remaining two substituted findings, it is likewise apparent that the damages awarded did not flow from any threat to file charges in violation of the debt collection practices act, but rather from the damage to the vehicle itself. These are findings 9(a) (cost to repair the vehicle) and 9(b) (loss of use of the vehicle). The jury was

---

[6] We note that the second tow in 9(e) is the same one for which damages were requested in 2(b).

instructed in both Questions 2 and 9 to only award damages *resulting from* the conduct violating the debt collection practices act. The district court erred in disregarding the jury's correct findings that none of the categories of damages addressed in these findings resulted from the conduct giving rise to liability in Question 1.

In its second issue, Precision Tune asserts that the evidence did not conclusively establish the amount of the damages awarded to Fehrenkamp in each of the substituted findings made by the district court. Precision Tune contends that the district court therefore erred in denying its motion for judgment on the verdict and improperly substituted its finding for those of the jury. Because we have already concluded that none of the categories for which damages were awarded included damages that "resulted from" Precision Tune's actionable conduct, we need not address whether there was conclusive proof of the amount of those damages. They were simply unavailable to Fehrenkamp under the charge submitted to the jury. We agree that the district court erred in denying Precision Tune's motion for entry of judgment and further erred in rendering judgment notwithstanding the verdict with substituted findings on damages. We sustain Precision Tune's first and second points of error.

### Attorneys' Fee Award

The district court, in four substituted findings, awarded Fehrenkamp attorneys' fees in the amount of $38,000 for preparation for trial and trial (finding 35(a)); $15,000 for a successful appeal to the court of appeals (finding 35(b));$11,000 for initiating or responding to a petition for review (finding 35(c)); and $5,000 in the event such petition for review is granted by the Texas Supreme Court (finding 35(d)). In its third issue, Precision Tune asserts that the attorneys' fee award

was improper because there was no finding of the actual damages required to support such an award. We agree.

Fehrenkamp sought attorneys' fees under the debt collection practices act and the deceptive trade practices-consumer protection act. *See* Tex. Fin. Code Ann. § 392.403(b); Tex. Bus. & Com. Code Ann. § 17.50(d).[7] Attorneys' fees are recoverable under the debt collection practices act if the party seeking an award "successfully maintains an action" under the act. *See* Tex. Fin. Code Ann. § 392.403(b); *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 30-31 (Tex. App.—Tyler 2000, pet. denied) (because plaintiff failed to prove any actual damages caused by debt collection practices, she did not successfully maintain action under debt collection practices act and attorneys' fees were not appropriate); *Rusk County Elec. Coop., Inc. v. Flanagan*, 538 S.W.2d 498, 500 (Tex. Civ. App.—Tyler 1976, writ ref'd n.r.e.) (refusing to award attorneys' fees under debt collection practices act when plaintiff's damages were not result of unreasonable collection efforts). Likewise, under the deceptive trade practices-consumer protection act, a plaintiff cannot recover attorneys' fees unless he recovers actual damages. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex. 1995). Because we have concluded the district court erred in disregarding the jury's negative compensatory damages findings and substituting affirmative ones therefor, there are no actual damages to support an award of attorneys' fees under either statute. We sustain Precision Tune's third point of error.

---

[7] Fehrenkamp sought attorneys' fees under the deceptive trade practices–consumer protection act through the tie-in provision of the debt collection practices act. *See* Tex. Fin. Code Ann. § 392.404(a) ("A violation of this chapter is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and is actionable under that subchapter.").

10

*Fehrenkamp's Cross-Appeal*

Fehrenkamp brings four cross-points on appeal. As an initial matter, we note that a party seeking to alter the trial court's judgment must file a notice of appeal. *See* Tex. R. App. P. 25.1(c). A party that does not file a notice of appeal is not entitled to more favorable relief than it obtained in the district court, except for just cause. *Id.* Therefore, an appellee generally may not attack the judgment by cross-point. However, when the appellee has secured a judgment notwithstanding the verdict, he "must bring forward by cross-point any issue or point that would have vitiated the verdict or that would have prevented an affirmance of the judgment if the district court had rendered judgment on the verdict." Tex. R. App. P. 38.2(b)(1). By his cross-appeal, Fehrenkamp contends that, in the event this Court agrees that the judgment entered by the district court is in error, the proper remedy is to reverse and remand the case for a new trial rather than render judgment in Precision Tune's favor. Fehrenkamp argues that remand is proper because the evidence supporting the zero damages findings is so against the great weight and preponderance of the evidence that a new trial is necessary.

A party challenging a jury finding on an issue upon which that party had the burden of proof must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). The test is whether the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Id.* at 241. We will not disturb the jury's failure to award damages and remand for a new trial unless we conclude that the great weight and preponderance of the evidence requires a contrary answer. The findings at issue here are limited to those challenged in

11

Fehrenkamp's motion for judgment notwithstanding the verdict, which are 2(a), 2(b), 9(a)-(e), 9(g), 9(h), and 35(a)-(d).

With respect to findings 2(b), 9(a)-(e), and 9(g), we have already concluded that the zero damages findings were appropriate as a matter of law because it was conclusively proven that those damages did not result from the only act that could have given rise to any liability on Precision Tune's part under the debt collection practices act—that is, the April 11 phone call from Mike Rouse. These findings are not, as Fehrenkamp argues, against the great weight and preponderance of the evidence. The same reasoning applies to finding 9(h), which sought an award of damages for time lost from work to address the damage to the vehicle. Again, the jury was charged with awarding damages that resulted from the violation of the debt collection practices act found in Question 1, not damages arising from the damage to the vehicle itself.

The remaining finding, 2(a), is the jury's failure to find that Fehrenkamp incurred damages in the form of time spent to prove that he did not owe Precision Tune any money. The only record evidence Fehrenkamp points to in support of this damage question is his own testimony that he spent "perhaps four hours" "just in dealing with Precision Tune and its refusal to do what it told [him] it would do on February 21st." The existence of this record evidence alone does not persuade us that the jury's failure to find damages is so against the great weight and preponderance of the evidence as to be manifestly unjust. First, it is not at all clear from Fehrenkamp's testimony when it was that he claims to have spent time "dealing with Precision Tune." To secure an affirmative damages finding, Fehrenkamp was required to demonstrate that the lost work time resulted from the phone call rather than from the vehicle damage. Fehrenkamp's testimony does not provide a time

12

frame for the lost work time. Furthermore, the testimony regarding the amount of time he spent, "perhaps four hours," is similarly vague. Fehrenkamp has not demonstrated that the zero damages finding in 9(h) is against the great weight and preponderance of the evidence. We hold that the jury's failure to find damages was not so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

## CONCLUSION

The district court erred in denying Precision Tune's motion for entry of judgment and in granting Fehrenkamp's motion for judgment notwithstanding the verdict and substituting affirmative findings for compensatory damages and attorneys' fees. We sustain Precision Tune's three issues on appeal and overrule Fehrenkamp's cross-points. Consequently, we reverse the district court judgment and render judgment that Fehrenkamp take nothing by his causes of action against Precision Tune.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Reversed and Rendered

Filed: April 2, 2009