TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00060-CV






Johnson Savage, Inc. d/b/a Precision Tune, Appellant


v.


Steve Fehrenkamp, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. GN202573, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N

 Appellant Johnson Savage, Inc. d/b/a Precision Tune ("Precision Tune") appeals from
a judgment awarding appellee Steve Fehrenkamp $4,806.11 in compensatory damages and
$38,000 in attorneys' fees based on the jury's finding that Precision Tune violated the Texas Debt
Collection Practices Act. (1)
 The jury found "0" damages for the violation, but on Fehrenkamp's
motion for judgment notwithstanding the verdict, the district court disregarded eleven of the negative
damages findings and substituted its own affirmative damages findings. We will reverse the district
court judgment and render judgment in Precision Tune's favor.


FACTUAL AND PROCEDURAL BACKGROUND

 On February 16, 2002, Fehrenkamp took his 1992 Pathfinder to Precision Tune, an
auto repair business, for an oil change. Four days later, on February 20, the Pathfinder's engine
failed. Fehrenkamp had the vehicle towed to another auto repair shop, where a mechanic determined
that the engine had seized up due to a lack of oil and noted the absence of the oil pan's drain plug. 
 Fehrenkamp informed Precision Tune of the engine failure and suspected cause. Precision Tune
had the vehicle towed to its shop and, on February 25, made arrangements for a rental car for
Fehrenkamp. Precision Tune's president, Mike Rouse, inspected the Pathfinder and concluded that
the engine had failed due to a broken rod, not for lack of oil. A second opinion from an independent
engineer confirmed Rouse's conclusion. On March 9, Precision Tune informed Fehrenkamp that
it would not accept responsibility for the engine failure and asked Fehrenkamp to return the rental
car and remove the Pathfinder from the shop. Fehrenkamp had the vehicle towed to his house. On
March 22, Fehrenkamp had it towed to a Nissan dealership for a repair estimate. Fehrenkamp
obtained a second estimate from yet another repair shop, which eventually completed the engine
repair on or about April 25. 

 Meanwhile, on March 28, Precision Tune sent Fehrenkamp a letter requesting
reimbursement for $1,143 in expenses it had incurred for towing and for the rental car. On
April 11, Rouse called the Fehrenkamp house and left the following message on the
answering machine: 


 Yes, this is Mike Rouse at Precision Tune. I know you've been in
receipt of my letter for ten days now. I have not heard from you
before. We--we have to proceed legally. Just wanted to know if--if
you had planned to pay us that--the amount you owe us for the
incidentals involved in your vehicle. I will, I guess, wait until
tomorrow before I file charges. Thank you, sir.



The next day, Fehrenkamp's attorney sent a letter to Rouse stating that Precision Tune's actions
constituted violations of the Texas Deceptive Trade Practices-Consumer Protection Act (2) and the
Texas Debt Collection Practices Act, and demanding that Precision Tune pay him the cost to repair
the engine as well as compensation for his lost time and inconvenience. Precision Tune did not
respond to the demand, and Fehrenkamp subsequently filed this suit alleging causes of action for
violations of the debt collection practices act, the deceptive trade practices-consumer protection act,
fraud, and negligence.

 After a two-day trial, the district court submitted to the jury a charge consisting of 
35 questions covering the four causes of action and including several damages questions. The jury
answered two of the liability questions affirmatively, finding that (1) Precision Tune "threatened to
file a charge, complaint or criminal action against Steve Fehrenkamp when Steve Fehrenkamp had
not violated a criminal law" (Question 1); and (2) Precision Tune's negligence "proximately caused
the occurrence or injury in question" (Question 31). However, the jury answered all the associated
damages questions negatively, finding "0" damages in answer to each. The jury failed to find
additional violations of the debt collection practices act beyond the threat, failed to find any
violations of the deceptive trade practices-consumer protection act, and failed to find fraud. Finally,
the jury awarded zero dollars in attorneys' fees.

 Precision Tune filed a motion for entry of judgment, which the district court denied. 
Fehrenkamp filed a motion requesting that the district court disregard thirteen of the seventeen jury
findings regarding damages arising from the debt collection practices act violation, and asking the
court to substitute affirmative damage findings in their place. Fehrenkamp did not challenge the
"0" damages findings associated with the affirmative finding of negligence. The district court
granted Fehrenkamp's request as to eleven negative damage findings--seven addressing
compensatory damages resulting from Precision Tune's conduct in violation of the debt collection
practices act and four relating to attorneys' fees. The district court signed a judgment awarding
Fehrenkamp $4,806.11 in compensatory damages and $38,000 in attorneys' fees. In three issues,
Precision Tune asserts on appeal that the district court erred by (1) awarding damages that did not
result from its violation of the debt collection practices act; (2) denying Precision Tune's motion for
entry of judgment based on the jury verdict finding zero damages; and (3) awarding attorneys' fees
without a finding of compensatory damages resulting from violations of the debt collection
practices act.


STANDARD OF REVIEW

 A motion for judgment notwithstanding the verdict should be granted only when the
evidence is conclusive and one party is entitled to recover as a matter of law, or when a legal
principle precludes recovery. Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex. 1990). A
district court may disregard any jury finding on a question that has no support in the evidence. 
Tex. R. Civ. P. 301. The district court may disregard a jury's verdict and render judgment
notwithstanding the verdict if no evidence supports the jury's findings or if a directed verdict would
have been proper. See Tiller v. McLure, 121 S.W.3d 709, 713 (Tex. 2003); Brown v. Bank of
Galveston, 963 S.W.2d 511, 513 (Tex. 1998). To determine whether the district court erred
in rendering judgment notwithstanding the verdict, we review all evidence in a light most
favorable to the verdict, indulging every reasonable inference in its favor. City of Keller v. Wilson,
168 S.W.3d 802, 821 (Tex. 2005). The jury's findings must not be disturbed if there is any evidence
of probative value to support them. International Armament Corp. v. King, 686 S.W.2d 595, 597
(Tex. 1985). Furthermore, the district court may render judgment notwithstanding the verdict and
substitute its own judgment of the proper measure of damages only if the evidence proves those
damages conclusively. State v. Huffstutler, 871 S.W.2d 955, 960-61 (Tex. App.--Austin
1994, no writ). 

 

DISCUSSION

Compensatory Damages Award

 The parties agree that the jury's finding, in answer to Question 1, of a violation of the
debt collection practices act was based solely on uncontroverted evidence of the April 11 phone call
wherein Rouse, Precision Tune's president, threatened to "file charges" against Fehrenkamp. Having
answered Question 1 affirmatively, the jury was required to answer Questions 2 and 9, the damages
questions. Question 2 asked the jury, "What sum of money, if any, if paid now in cash, do you find
from a preponderance of the evidence would fairly and reasonably compensate Steve Fehrenkamp
for his damages, if any, which resulted from the conduct you found to exist in Question 1?"
(Emphasis added.) There were four separate categories of damages for the jury to consider: 


 2(a) the value of time Fehrenkamp spent to prove he did not owe
any debt to Precision Tune;


 2(b) the expenses incurred by Fehrenkamp in having the
Pathfinder towed on March 9, 2002;


 2(c) Fehrenkamp's past mental anguish; and


 2(d) Fehrenkamp's mental anguish that he may sustain in the
future.



Question 9 asked the jury, "What sum of money, if any, if paid now in cash, would fairly and
reasonably compensate Steve Fehrenkamp for his damages, if any, that resulted from such conduct?"
(Emphasis added.) (3) For this question, there were nine separate categories of damages for the jury
to consider: 


 9(a) the cost to restore the vehicle to the condition it was in before
the February 16, 2002 oil change;


 9(b) loss of use of the vehicle;


 9(c) cost of replacement of the engine and related repairs;


 9(d) cost of the repair estimate from Southpoint Nissan;


 9(e) cost of the tow from Austin High School to Jimmy's Top
Tech and from Precision Tune to the Fehrenkamp home;


 9(f) cost to Fehrenkamp of substitute transportation;


 9(g) cost of the February 16, 2002 oil change; 


 9(h) value of time Fehrenkamp lost from work to address damage
to the vehicle; and


 9(i) Fehrenkamp's past mental anguish



The jury awarded zero damages for each of the separate categories in Questions 2 and 9 of the
charge. Precision Tune filed a motion to render judgment on the verdict, which the district court
denied. Fehrenkamp filed a motion to disregard certain jury findings and render judgment in his
favor, which the district court granted in part.

 In his motion, Fehrenkamp contended that there was no evidence to support the jury's
answer of zero to nine Questions: 2(a), 2(b), 9(a), 9(b), 9(c), 9(d), 9(e), 9(g), and 9(h). He asked
the court to disregard these findings and substitute its own affirmative findings as to damages in
amounts Fehrenkamp argued were conclusively proven at trial. (4) The district court granted the
motion as to seven of the nine findings--2(b), 9(a), 9(b), 9(c), 9(d), 9(e), and 9(g)--and for each
finding substituted a damages figure in place of the zero damages found by the jury. (5) Because
findings 9(a) (cost to restore vehicle to condition before oil change) and 9(c) (cost of replacement
of the engine and related repairs) were cumulative, Fehrenkamp made an election to recover damages
under finding 9(a); as a result, finding 9(c) is not part of the judgment. 

 In its first issue, Precision Tune complains that the district court erred by rendering
a judgment awarding Fehrenkamp compensation for damages that could not have resulted from the
conduct the jury found to violate the debt collection practices act. Precision Tune argues that the
damages substituted by the district court were improper because they either (1) accrued or were
incurred before April 11, the date of the phone call making the threat to file charges that the parties
agree constitutes the debt collection practices act violation; or (2) did not emanate from the threat
contained in the call, but rather were caused by the damage to the vehicle itself, which also occurred
before April 11. We agree. Four of the substituted damages findings compensated Fehrenkamp for
damages incurred before the April 11 threat even occurred and could not in any way have resulted
from that threat. These are findings 2(b) (cost of tow on March 9 from Precision Tune to the
Fehrenkamp residence); 9(d) (cost of repair estimate done at the Nissan dealership on or about
March 22); 9(e) (cost of two tows, one occurring on February 20 from Austin High School to a repair
shop and the other occurring on March 9 from Precision Tune to the Fehrenkamp residence); (6) and
9(g) (cost of the February 16 oil change). Their temporal relationship to the April 11 phone call
alone compels the conclusion that these damages could not have resulted from any violation of the
debt collection practices act contained in that call. With respect to the remaining two substituted
findings, it is likewise apparent that the damages awarded did not flow from any threat to file charges
in violation of the debt collection practices act, but rather from the damage to the vehicle itself. 
These are findings 9(a) (cost to repair the vehicle) and 9(b) (loss of use of the vehicle). The jury was
instructed in both Questions 2 and 9 to only award damages resulting from the conduct violating the
debt collection practices act. The district court erred in disregarding the jury's correct findings that
none of the categories of damages addressed in these findings resulted from the conduct giving rise
to liability in Question 1.

 In its second issue, Precision Tune asserts that the evidence did not conclusively
establish the amount of the damages awarded to Fehrenkamp in each of the substituted findings
made by the district court. Precision Tune contends that the district court therefore erred in denying
its motion for judgment on the verdict and improperly substituted its finding for those of the jury. 
Because we have already concluded that none of the categories for which damages were awarded 
included damages that "resulted from" Precision Tune's actionable conduct, we need not address
whether there was conclusive proof of the amount of those damages. They were simply unavailable
to Fehrenkamp under the charge submitted to the jury. We agree that the district court erred in
denying Precision Tune's motion for entry of judgment and further erred in rendering judgment
notwithstanding the verdict with substituted findings on damages. We sustain Precision Tune's first
and second points of error.


Attorneys' Fee Award

 The district court, in four substituted findings, awarded Fehrenkamp attorneys' fees
in the amount of $38,000 for preparation for trial and trial (finding 35(a)); $15,000 for a successful
appeal to the court of appeals (finding 35(b));$11,000 for initiating or responding to a petition for
review (finding 35(c)); and $5,000 in the event such petition for review is granted by the Texas
Supreme Court (finding 35(d)). In its third issue, Precision Tune asserts that the attorneys' fee award
was improper because there was no finding of the actual damages required to support such an award. 
We agree. 

 Fehrenkamp sought attorneys' fees under the debt collection practices act and the
deceptive trade practices-consumer protection act. See Tex. Fin. Code Ann. § 392.403(b);
Tex. Bus. & Com. Code Ann. § 17.50(d). (7) Attorneys' fees are recoverable under the debt collection
practices act if the party seeking an award "successfully maintains an action" under the act. See
Tex. Fin. Code Ann. § 392.403(b); Jackson Law Office, P.C. v. Chappell, 37 S.W.3d 15, 30-31
(Tex. App.--Tyler 2000, pet. denied) (because plaintiff failed to prove any actual damages caused
by debt collection practices, she did not successfully maintain action under debt collection practices
act and attorneys' fees were not appropriate); Rusk County Elec. Coop., Inc. v. Flanagan,
538 S.W.2d 498, 500 (Tex. Civ. App.--Tyler 1976, writ ref'd n.r.e.) (refusing to award attorneys'
fees under debt collection practices act when plaintiff's damages were not result of unreasonable
collection efforts). Likewise, under the deceptive trade practices-consumer protection act, a plaintiff
cannot recover attorneys' fees unless he recovers actual damages. State Farm Life Ins. Co.
v. Beaston, 907 S.W.2d 430, 437 (Tex. 1995). Because we have concluded the district court erred
in disregarding the jury's negative compensatory damages findings and substituting affirmative ones
therefor, there are no actual damages to support an award of attorneys' fees under either statute. We
sustain Precision Tune's third point of error. 


Fehrenkamp's Cross-Appeal

 Fehrenkamp brings four cross-points on appeal. As an initial matter, we note that a
party seeking to alter the trial court's judgment must file a notice of appeal. See Tex. R. App. P.
25.1(c). A party that does not file a notice of appeal is not entitled to more favorable relief than it
obtained in the district court, except for just cause. Id. Therefore, an appellee generally may not
attack the judgment by cross-point. However, when the appellee has secured a judgment
notwithstanding the verdict, he "must bring forward by cross-point any issue or point that would
have vitiated the verdict or that would have prevented an affirmance of the judgment if the district
court had rendered judgment on the verdict." Tex. R. App. P. 38.2(b)(1). By his cross-appeal,
Fehrenkamp contends that, in the event this Court agrees that the judgment entered by the district
court is in error, the proper remedy is to reverse and remand the case for a new trial rather than
render judgment in Precision Tune's favor. Fehrenkamp argues that remand is proper because the
evidence supporting the zero damages findings is so against the great weight and preponderance of
the evidence that a new trial is necessary. 

 A party challenging a jury finding on an issue upon which that party had the burden
of proof must demonstrate that the adverse finding is against the great weight and preponderance of
the evidence. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001). The test is whether the
finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly
wrong and manifestly unjust. Id. at 241. We will not disturb the jury's failure to award damages and
remand for a new trial unless we conclude that the great weight and preponderance of the evidence
requires a contrary answer. The findings at issue here are limited to those challenged in
Fehrenkamp's motion for judgment notwithstanding the verdict, which are 2(a), 2(b), 9(a)-(e), 9(g),
9(h), and 35(a)-(d). 

 With respect to findings 2(b), 9(a)-(e), and 9(g), we have already concluded that the
zero damages findings were appropriate as a matter of law because it was conclusively proven that
those damages did not result from the only act that could have given rise to any liability on Precision
Tune's part under the debt collection practices act--that is, the April 11 phone call from Mike
Rouse. These findings are not, as Fehrenkamp argues, against the great weight and preponderance
of the evidence. The same reasoning applies to finding 9(h), which sought an award of damages for
time lost from work to address the damage to the vehicle. Again, the jury was charged with
awarding damages that resulted from the violation of the debt collection practices act found in
Question 1, not damages arising from the damage to the vehicle itself. 

 The remaining finding, 2(a), is the jury's failure to find that Fehrenkamp incurred
damages in the form of time spent to prove that he did not owe Precision Tune any money. The only
record evidence Fehrenkamp points to in support of this damage question is his own testimony that
he spent "perhaps four hours" "just in dealing with Precision Tune and its refusal to do what it told
[him] it would do on February 21st." The existence of this record evidence alone does not persuade
us that the jury's failure to find damages is so against the great weight and preponderance of the
evidence as to be manifestly unjust. First, it is not at all clear from Fehrenkamp's testimony when
it was that he claims to have spent time "dealing with Precision Tune." To secure an affirmative
damages finding, Fehrenkamp was required to demonstrate that the lost work time resulted from the
phone call rather than from the vehicle damage. Fehrenkamp's testimony does not provide a time
frame for the lost work time. Furthermore, the testimony regarding the amount of time he spent,
"perhaps four hours," is similarly vague. Fehrenkamp has not demonstrated that the zero damages
finding in 9(h) is against the great weight and preponderance of the evidence. We hold that the
jury's failure to find damages was not so against the great weight and preponderance of the evidence
as to be clearly wrong and manifestly unjust. 

 

CONCLUSION

 The district court erred in denying Precision Tune's motion for entry of judgment and
in granting Fehrenkamp's motion for judgment notwithstanding the verdict and substituting
affirmative findings for compensatory damages and attorneys' fees. We sustain Precision Tune's
three issues on appeal and overrule Fehrenkamp's cross-points. Consequently, we reverse the district
court judgment and render judgment that Fehrenkamp take nothing by his causes of action against
Precision Tune. 


 _____________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Reversed and Rendered

Filed: April 2, 2009

 
1. Tex. Fin. Code Ann. §§ 392.001-.404 (West 2006).

2. Tex. Bus. & Com. Code Ann. §§ 17.46-.63 (West 2002 & Supp. 2008).
3. Question 9 was conditioned on an affirmative answer to any of Questions 1, 3, or 5. The
jury answered "No" to Questions 3 and 5, and answered "Yes" to Question 1, which was based on
Rouse's April 11 phone call. Accordingly, the phrase "such conduct" in Question 9 necessarily
referred to that phone call.
4. Fehrenkamp did not ask the district court to disregard findings 2(c) (past mental anguish),
2(d) (future mental anguish), 9(f) (cost of substitute transportation), or 9(i) (past mental anguish).
5. The district court declined to disregard findings 2(a) (value of time Fehrenkamp spent
proving he was not indebted to Precision Tune), and 9(h) (value of time Fehrenkamp lost from work
to address the damage to the vehicle). Fehrenkamp did not bring his own appeal to challenge the
court's denial of this requested relief.
6. We note that the second tow in 9(e) is the same one for which damages were
requested in 2(b).
7. Fehrenkamp sought attorneys' fees under the deceptive trade practices-consumer
protection act through the tie-in provision of the debt collection practices act. See Tex. Fin. Code
Ann. § 392.404(a) ("A violation of this chapter is a deceptive trade practice under Subchapter E,
Chapter 17, Business & Commerce Code, and is actionable under that subchapter.").