NUMBER 13-10-00371-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

GARY WAYNE HARTON,                                                        
Appellant,

 

v.

 

FIRST VICTORIA
NATIONAL BANK,                                    Appellee.

                                                                                                                     
  

 

On appeal from the 135th
District Court 

of Jackson County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Benavides 

Memorandum Opinion by
Justice Rodriguez

 

Appellant Gary Wayne Harton appeals from
the trial court's judgment notwithstanding the verdict (JNOV) entered in favor
of appellee First Victoria National Bank (First Victoria).  The underlying
lawsuit involved six separate commercial loan agreements on which Harton was
either the maker of the note or the individual guarantor for Jackson County
Equipment Company (JCEC).  By three issues, Harton contends that:  (1) First
Victoria released its claims against him when it settled its claims in
bankruptcy; and, in the alternative, (2-3) First Victoria is not entitled to
judgment for any amount in excess of the damages and attorney's fees awarded by
the jury.  We affirm, in part, as to damages, and reverse and remand, in part, for
reinstatement of the jury’s award of attorney’s fees.

I.  Background[1]

In 2008, Harton signed a series of
promissory notes, two individually and four as guarantor for JCEC, a
farm equipment company owned and managed by Harton.  The debts were secured by
pieces of agricultural equipment.  Harton subsequently defaulted on the notes. 
First Victoria brought suit against Harton to recover the alleged deficiencies
on the notes that were in default.  In September 2009, the trial court entered
a partial summary judgment on liability in favor of First Victoria.

While the suit on damages was pending,
JCEC filed for Chapter 7 bankruptcy protection.  Another creditor of JCEC
initiated an adversary proceeding within the bankruptcy proceeding.  First
Victoria intervened, claiming that it had superior rights in the collateral
seized by yet another creditor, Case New Holland (Case).  Subsequently, the
bankruptcy court entered an order severing all claims pending in the adversary
proceeding against Harton, individually, and remanding those claims to state
district court.  The remaining parties went to mediation, and on January 26,
2010, a Binding Settlement Agreement (Agreement) was signed by Commercial State
Bank of El Campo, CNH Capital America, LLC (Case's successor), First Victoria,
and Lowell Cage as Chapter 7 Trustee for JCEC.  On March 10, 2010, the
bankruptcy court's Amended Order Authorizing Compromise, issued pursuant to the
Agreement, ordered, among other things, that Case pay First Victoria $100,000.

On April 9, 2010, Harton filed his
second amended original answer, pleading, among other things, the affirmative
defense of release, a defense premised on the Agreement.  One month later, the
case was tried to a jury where the only questions at issue at trial were the amounts
owed by Harton pursuant to the notes and guaranty agreements and attorney's
fees.

At the close of the evidence, Harton
moved for an instructed verdict based on the release provision in the
Agreement.  The trial court denied his motion and submitted First Victoria's
claim for damages and attorney's fees.  The jury found damages in the amount of
$1,390.50, $14,220, $0.00, and $59,000 for Notes #1 through #4,
respectively.[2] 
The jury also awarded attorney's fees to First Victoria, in the amount of
$2500.

After the verdict was received, First
Victoria filed a motion to disregard the jury's findings with respect to Notes
#1, #2, #3, and #4, and the attorney's fees and for JNOV.  Harton filed a
motion for judgment and a reply to First Victoria's motion.  In his reply, Harton
asked the trial court to render a take-nothing judgment against First Victoria
because the evidence proved, as a matter of law, that it released its claims
against him.  Alternatively, Harton moved for judgment on the verdict.  The
trial court granted First Victoria's motion to disregard and for JNOV and
denied Harton's motion.  This appeal followed.

II. 
Analysis

A.  Release

By his first issue, Harton contends that
the trial court improperly failed to enforce the Agreement's release
provision.  This complaint challenges the trial court's denial of Harton’s
motion for instructed verdict and his post-trial motion, which we construe as a
motion for JNOV.

Harton contends that First Victoria
released its claims against him when it signed the Agreement.  He argues that
not only did the Agreement resolve First Victoria's claims against Case's
successor, it also unambiguously released all of First Victoria's claims
against the "agents, employees, officers, directors, [and]
shareholders" of all other parties, one of which was JCEC.  As the owner
and operator of JCEC, Harton claims that he was released from liability by
First Victoria on the notes that are the subject of the suit.  In response,
First Victoria asserts that Harton's liability on the notes and guaranties was
not released because (1) the release language in the Agreement limited its
scope to the issues settled between the creditors in the adversary proceeding
and Harton's individual liability on his unpaid debts was not part of the
subject matter of that proceeding, and (2) Harton was not an intended
third-party beneficiary of the agreement.  We agree.

1.  Standard of Review

"A court should grant a motion for
judgment notwithstanding the verdict if a legal principle prevents a party from
prevailing on its claim."  UPS v. Tasdemiroglu, 25 S.W.3d 914, 916
(Tex. App.—Houston [14th] Dist. 2000, pet. denied) (citing ARCO v. Misty
Prods., Inc., 820 S.W.2d 414, 420-21 (Tex. App.—Houston [14th Dist.] 1991,
writ denied)).  In this case, Harton argues that the trial court should have
granted his motion for instructed verdict and his motion for JNOV because his
defense of release prevented First Victoria from prevailing on its claim for
damages.

In reviewing the trial court's
instructed verdict or its JNOV, we conduct a legal sufficiency analysis of the
evidence, the same test applied to appellate no-evidence challenges.  See
Tanner v. Nationwide Mut. Fire Ins. Co., 289 S.W.3d 828, 830 (Tex. 2009); City
of Keller v. Wilson, 168 S.W.3d 802, 823 (Tex. 2005).  Applying the
no-evidence standard, we consider the evidence in the light most favorable to
the jury's verdict and indulge every reasonable inference that would support
it.  City of Keller, 168 S.W.3d at 822; Tiller v. McLure, 121
S.W.3d 709, 713 (Tex. 2003) (per curiam).  We credit favorable evidence if a
reasonable juror could and disregard contrary evidence unless a reasonable
juror could not.  Tanner, 289 S.W.3d at 830.

2.  Applicable Law

A release is a complete bar to a later
action based on matters covered in the release.  Schomburg v. TRW Vehicle
Safety Sys., Inc., 242 S.W.3d 911, 913 (Tex. App. —Dallas 2008, pet.
denied) (op. on reh’g) (citing Deer Creek Ltd. v. N. Am. Mortgage Co.,
792 S.W.2d 198, 201 (Tex. App.—Dallas 1990, no writ)).  Releases are only
effective against named parties to the release or parties described with such
particularity that their identity is not in doubt.  Mem'l Med. Ctr. of E.
Tex. v. Keszler, 943 S.W.2d 433, 434 (Tex. 1997) (per curiam) (citing Duncan
v. Cessna Aircraft Co., 665 S.W.2d 414, 420 (Tex. 1984)).  Moreover, the
intention of the contracting parties is controlling when determining whether a
third party can enforce a contract.  MCI Telecomm. Corp. v. Tex. Utils.
Elec. Co., 995 S.W.2d 647, 651 (Tex. 1999).  And the intention to contract
or confer a benefit to a third party must be clearly and fully spelled out in
order to show the contracting parties entered into the contract directly for
the third parties' benefit.  Dallas Firefighters Ass'n, v. Booth Research
Group, Inc., 156 S.W.3d 188, 192-93 (Tex. App.—Dallas 2005, pet. denied); see
First Union Nat'l Bank v. Richmont Capital Partners I, L.P., 168 S.W.3d
917, 929 (Tex. App.—Dallas, 2005, pet. ref'd) (explaining that if there is a
reasonable doubt as to the intent of the contracting parties to confer a direct
benefit on the third party, then the third-party beneficiary claim must fail).

We determine the scope of a release in
the same way we review other contracts. See Williams v. Glash, 789
S.W.2d 261, 264 (Tex. 1990).  That is, we ascertain and give effect to the
parties' intentions as expressed in the document by examining the contract as a
whole, evaluating the meaning of each provision.  Seagull Energy E&P,
Inc. v. Eland Energy, Inc., 207 S.W.3d 342, 345 (Tex. 2006); Frost Nat'l
Bank v. L&F Distribs., Ltd., 165 S.W.3d 310, 311-12 (Tex. 2005) (per
curiam).  Considering the entire document, we attempt to harmonize and give
effect to all provisions by analyzing the provisions with reference to the
whole agreement.  Frost Nat'l Bank, 165 S.W.3d at 311-12.  It is appropriate
to construe the release in light of the facts and surrounding circumstances as
shown by the record.  Houston Oilers, Inc., v. Floyd, 518 S.W.2d 836,
838 (Tex. Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.).  "If,
after the pertinent rules of construction are applied, the contract can be
given a definite or certain legal meaning, it is unambiguous and we construe it
as a matter of law."  Frost Nat'l Bank, 165 S.W.3d at 312.

3.  Discussion

            The Agreement is captioned
with the style of the adversary proceeding brought within JCEC's bankruptcy
proceeding.  Neither party argues that the Agreement is ambiguous, and we agree. 
Therefore, we will construe it as a matter of law.  See id.

Paragraph 3 of the Agreement set out the
following release language:

The parties agree to release, indemnify (by, through or
under), discharge and forever hold the other harmless from all claims, demands
or suits, known or unknown, fixed or contingent, liquidated or unliquidated,
whether or not asserted in the above case, as of this date arising from or
related to the events and transactions which are the subject matter of this
case.

 

This mutual release runs to the benefit of all attorneys,
agents, employees, officers, directors, shareholders, parents, affiliates,
subsidiaries and partners of the parties.  "Party" as used in this
release includes all named parties to this case plus all signatories hereto, as
well as all related entities of the parties.

 

Based on this language, the Agreement
specifically released JCEC, a named party, and its signatory, the Trustee for
JCEC's Chapter 7 bankruptcy.  It also released Harton from liability in his
capacity, if any, as a JCEC employee, officer, director, and shareholder. 
Harton contends, however, that the Agreement also released him in his
individual capacity as a maker of or guarantor on the notes at issue in this
case.  We disagree.

Harton was, at one time, a party
defendant in the adversary proceeding.  Prior to the parties entering into the
Agreement, however, First Victoria's claims against Harton, in his individual
capacity, were severed from the adversary proceeding and remanded to state
district court.  When the Agreement was signed, Harton was neither a named
party nor a signatory.  And although "employees, officers, directors,
shareholders, parents, affiliates, subsidiaries and partners of the
parties" were released, the Agreement did not specifically release guarantors
of notes or makers of any debt owed to the creditors.  Neither did the
Agreement clearly nor fully spell out the parties' intent to confer a benefit
to Harton as a third-party guarantor on or maker of such debt.  See Dallas
Firefighters Ass'n, 156 S.W.3d at 192-93.

In addition, the release was limited to
"claims, demands or suits . . . arising from or related to the
events and transactions which are the subject matter of this case." 
(Emphasis added.)  By this language, the Agreement limited the release to the subject
matter of the adversary proceeding—i.e., the creditors’ lien priority dispute. 
Therefore, after the severance of the claims against Harton, in his individual
capacity, the only issue that remained to be settled in the adversary
proceeding was the secured creditors' competing claims to the collateral and to
the proceeds from the sale of the collateral.  The scope of the issues covered
by the Agreement did not include Harton's individual liability on his unpaid
debt to First Victoria.

Therefore, we conclude that the evidence
did not conclusively prove, as a matter of law, Harton's release defense to
First Victoria's cause of action, and thus, the trial court did not err in
denying Harton’s motion for instructed verdict and his motion for JNOV.  See
Tanner, 289 S.W.3d at 830; City of Keller, 168 S.W.3d at 822.  We
overrule Harton’s first issue.

B. 
Damages

By his second issue, Harton contends
that First Victoria was not entitled to JNOV on amounts due under the notes
because First Victoria did not show that it disposed of all collateral in a
commercially reasonable manner and, thus, did not establish the greater dollar
amounts as a matter of law.  Harton also claims that First Victoria did not
prove damages, as a matter of law, in excess of those found by the jury.  In
response, First Victoria asserts that Harton waived the issue of commercial
reasonableness of the disposition of the collateral and that the jury’s
findings were not based on the evidence presented at trial.

1.  Standard of Review

The district court may disregard a
jury's verdict and render JNOV if no evidence supports the jury's findings or
if a directed verdict would have been proper.  See Tiller, 121 S.W.3d at
713; Brown v. Bank of Galveston, 963 S.W.2d 511, 513 (Tex. 1998); see
also Tex. R. Civ. P. 301.  As
set out above, we review a challenge to a JNOV under a no-evidence standard.  See
Tanner, 289 S.W.3d at 830; City of Keller, 168 S.W.3d at 823. 
Specific as to damages, the district court may render JNOV and substitute its
own judgment only if the evidence proves the damages sought by the JNOV movant conclusively. 
State v. Huffstutler, 871 S.W.2d 955, 960-61 (Tex. App.—Austin 1994, no
writ); see City of Keller, 168 S.W.3d at 810. 

2.  Applicable Law

            "Every aspect of a disposition of collateral,
including the method, manner, time, place, and other terms, must be
commercially reasonable."  Tex.
Bus. & Comm. Code Ann. § 9.610(b) (West 2011).  The debtor may put
the commercial reasonableness of the creditor's disposition at issue utilizing
the trial court's rules of pleading and practice.  Id. § 9.626 cmt. 3. (West 2011); see Tex. R. Civ. P. 45(b) (requiring that a
defendant's pleadings state in plain and concise language the grounds for any
defense alleged).  “If the secured party's compliance is placed in issue, the
secured party has the burden of establishing that the . . .
disposition . . . was" commercially reasonable.  Tex. Bus. & Comm. Code Ann. §
9.626(a)(2).

The commercial reasonableness of a sale
is a question of fact to be determined by the jury.  Gordon & Assocs.,
Inc. v. Cullen Bank/City West, N.A., 880 S.W.2d 93, 96 (Tex. App.—Corpus
Christi 1994, no writ).  If no element of an available defense is submitted to
the jury or requested by the defendant, that defense is waived and cannot be
asserted on appeal.  Tex. R. Civ. P. 279;
Gulf State Utils. Co. v. Low, 79 S.W.3d 561, 565 (Tex. 2002); Harmes
v. Arklatex Corp., 615 S.W.2d 177, 179 (Tex. 1981).

2.  Discussion

            a.  Waiver of
Commercial Reasonableness Issue

            Assuming, without deciding, that Harton's
trial pleading placed the disposition of the collateral in issue, there is no
record that Harton requested a jury instruction or a jury question regarding
the commercial reasonableness of First Victoria's disposition of the
collateral.  By not requesting inclusion of this issue in the jury charge,
Harton has waived any issue challenging the commercial reasonableness of First
Victoria's disposition of the collateral.  See Tex. R. Civ. P. 279; Gulf State Utils. Co., 79 S.W.3d
at 565; Gordon & Assocs., 880 S.W.2d at 96.

            b.  Evidence
Establishing the Amount of Damages

            The record before this Court establishes that
First Victoria's representatives testified to the dollar amount owed on each of
the notes at issue.  They testified that $100,000 from Case through the adversary
proceeding, an additional $37,000 from Harton, and all proceeds from First
Victoria’s sale of collateral had been applied to the debt.  The representatives'
testimony and documentary evidence established that, immediately before trial,
the balances owed by Harton on Notes #1, #2, #3, and #4 were $117,265.63,
$194,220, $21,580, and $133,610.43, respectively.  These dollar amounts were
neither questioned nor contradicted through evidence offered by Harton.

Even considering the evidence in the
light most favorable to the jury's verdict and indulging every reasonable
inference that would support it, we conclude that the evidence at trial
conclusively established the amount of damages granted in the trial court's
judgment.  See Tiller, 121 S.W.3d at 713; Brown, 963 S.W.2d at
513; see also City of Keller, 168 S.W.3d at 810, 822.  Therefore, the
trial court's JNOV regarding damages was proper.  We overrule Harton's second
issue.

C. 
Attorney's Fees

            By his third issue, Harton
contends that First Victoria did not prove, as a matter of law, that it
expended more in attorney's fees than found by the jury.  He asserts that there
was no direct testimony on the following jury issue:  "What sum of money,
if any, . . . would fairly and reasonably compensate First Victoria
National Bank for their reasonable and necessary attorneys' fees expended in
the collection of the debts claimed against . . . Harton."

1.  Standard of Review

            Again, we will review the trial court's JNOV,
this time on the award of attorney's fees, under the no-evidence standard.  See
Tanner, 289 S.W.3d at 830; City of Keller, 168 S.W.3d at 823.                                            

2.  Applicable Law

Generally, the testimony of an
interested witness, though not contradicted, does nothing more than raise a
fact issue to be determined by the jury.  Cochran v. Wool Growers Cent.
Storage Co., 140 Tex. 184, 191, 166 S.W.2d 904, 908 (1942); see Garcia
v. Gomez, 319 S.W.3d 638, 642 (Tex. 2010).  However, there is a
long-standing exception to this general rule, which provides that the
uncontroverted testimony of an interested witness will establish attorney's
fees as reasonable and necessary as a matter of law if:  (1) the testimony
could readily be contradicted if untrue; (2) the testimony is clear, direct and
positive; and (3) there are no circumstances that tend to discredit or impeach
the testimony.  Smith v. Patrick W.Y. Tam Trust, 296 S.W.3d 545, 547 (Tex.
2009); Rosenbalt v. Freedom Life Ins. Co. of Am., 240 S.W.3d 315, 321
(Tex. App.—Houston [1st Dist.] 2007, no pet.) (interpreting and applying Ragsdale
v. Progressive Voters League, 801 S.W.2d 880, 882 (Tex. 1990) (per
curiam)).

3. 
Discussion

First Victoria's counsel, an interested
witness, was the only witness who provided testimony about attorney's fees in
this case and their reasonableness.  After testifying as to his experience and
expertise, counsel explained that he was familiar with the fees his firm had
charged First Victoria in connection with this lawsuit.  Although his firm's
billing records were not admitted into evidence, counsel testified that he had
reviewed those records.  When asked if he had an opinion as to what a
reasonable fee for the services rendered by his law firm to First Victoria
would be, counsel responded as follows:

Yes, sir.  Keep in mind that there has been, there have
been three different matters going on here.  One is a collection case against
Mr. Harton based on a lawsuit on his guaranty.  Another is the bankruptcy in
Chapter 11, which later became a Chapter 7 liquidation of Jackson County
Equipment Company.  Then there's another lawsuit in which First Victoria
National Bank participated with all the other creditors in the bankruptcy
court, which was basically a lien dispute fight, so we're talking about three
different things going on all at the same time. . . .  Exclusive
of this present proceeding, $20,000 would be an appropriate fee."

 

Counsel then testified that a reasonable fee for trial
preparation and for appearance at trial in this case would be $5000.

            The jury found that First Victoria's
reasonable and necessary attorney's fees expended in the collection of the
debts claimed against Harton were $2500.  The trial court, however, entered
JNOV for attorney's fees in the amount of $25,000.

The only testimony regarding attorney's
fees was provided by an interested witness.  Under the general rule, that would
do nothing more than raise a fact issue to be determined by the jury.  See
Cochran, 166 S.W.2d at 908.  First Victoria argues that the general rule
does not apply.  Rather, it contends that the exception applies because
counsel's testimony was "clear, direct, and positive" and, therefore,
established attorney's fees as reasonable and necessary as a matter of law.  See
Rosenbalt, 240 S.W.3d at 321.  We disagree.

Excluding fees for trial preparation and
the trial itself, counsel testified that "$20,000 would be an
appropriate fee."  Counsel's opinion was prefaced by his testimony that
one must "[k]eep in mind that there . . . have been three
different matters going on.…  [Those matters included] a collection case[,] . . .
the bankruptcy . . . liquidation of Jackson County Equipment
Company[,] . . . [and] a lien dispute fight, so we're talking about
three different things going on all at the same time. . . ." 
Considering the evidence in the light most favorable to the jury's verdict, we
conclude that this testimony is not direct, clear, or positive.  Rather, it is
indirect, unclear, and indefinite because we cannot determine whether the
witness was referring to one or to all of the proceedings when he opined that "$20,000
would be an appropriate fee."  Without more, we cannot conclude that the
exception applies in this case.  Because the exception does not apply, we further
cannot conclude that counsel's testimony established attorney's fees as
reasonable and necessary as a matter of law.  Thus, the trial court erred in
entering a JNOV for attorney's fees on this basis.

In addition, the trial court admitted
computer-generated documents from First Victoria.  This documentation provided
general information, balance and payment information, and a loan history of
approximately two years for each note.  Included in the loan histories for
Notes #1 and #5 were a number of entries assessing attorney's fees for services
provided by counsel's law firm to First Victoria.  The amount of fees assessed
for Note #1 was $12,510.54, and the amount for Note #5 was $1,973.09.[3] 
The fees assessed totaled $14,483.63.  This evidence contradicts the testimony
given by the interested witness.  With contradictory evidence which tends to
discredit counsel's testimony, the exception to the general rule would not
apply, and the interested witness's testimony would not, as a matter of law,
support a JNOV on attorney's fees.  See Cochran, 166 S.W.2d at 908; Rosenbalt,
240 S.W.3d at 321.

            Based on the above, we cannot affirm the
trial court's granting of the JNOV on attorney's fees because the evidence does
not, as a matter of law, establish that $25,000 is a reasonable fee for
services rendered by counsel's law firm to First Victoria.  We sustain Harton's
third issue.[4] 

III. 
Conclusion

Accordingly, we affirm the trial court's
judgment notwithstanding the verdict, in part, as to damages, reverse its judgment,
in part, as to attorney's fees, and remand this cause to the trial court for
entry of judgment reinstating attorney's fees in the amount of $2500, that
being the sum of attorney's fees awarded by the jury.

 

                                                                                                             NELDA
V. RODRIGUEZ

                                                                                                             Justice

 

Delivered
and filed the 

19th
day of May, 2011.









[1] Because this is a memorandum opinion
and the parties are familiar with the facts, we will not recite them here
except as necessary to advise the parties of the Court's decision and the basic
reasons for it.  See Tex. R. App.
P. 47.4.





[2] The
jury also found Harton owed First Victoria $70,067.36 on Note #5 and $24,582.85
on Note #6. 
With
respect to those findings, First Victoria requested that the trial court enter
judgment in conformity with the answers given by the jury, and after urging his
defense of release, Harton, in the alternative, moved for judgment on the
verdict.  On appeal, subject to his release argument, Harton does not challenge
these findings.





[3] The documentation for
Notes #2, #3, #4, and #6 included no assessments for attorney's fees.

 





[4] When, as here, the
trial court renders a JNOV, and the losing party appeals, the prevailing party
may also appeal and present points or issues on any ground that would either
vitiate the jury verdict or preclude affirming the judgment and reinstating the
jury's verdict.  Swink v. Alesi, 999 S.W.2d 107, 111-12 (Tex.
App.—Houston [14th Dist.] 1999, no pet.); see also Tex. R. App. P. 38.2(b) (providing that
when a trial court renders a JNOV "the appellee must bring forward by
cross-point any issue or point that would have vitiated the verdict or that
would have prevented an affirmance of the judgment if the trial court had rendered
judgment on the verdict"); Tex. R.
Civ. P. 324(c) (stating that when a JNOV is rendered the appellee
"may bring forward by cross-point contained in his brief filed in the
Court of Appeals any ground which would have vitiated the verdict or would have
prevented an affirmance of the judgment had one been rendered by the trial
court in harmony with the verdict, including although not limited to the ground
that one or more of the jury's findings have insufficient support in the
evidence or are against the overwhelming preponderance of the evidence as a
matter of fact").  "The purpose of these rules is to require a final
disposition of the case by the appellate court, where a judgment
notwithstanding the verdict is erroneously rendered by the trial court, on the
basis of the record before it, and to order a remand only as to questions that
require the taking of additional evidence, such as jury misconduct."  Swink,
999 S.W.2d at 112.  Therefore, "[f]ailure to bring forward by cross-point
an issue or point that would vitiate the verdict or prevent an affirmance of
the judgment waives that complaint."  Tex.
R. App. P. 38.2(b).  Here, First Victoria presented no cross-points on
appeal on Harton's attorney's fee issue and, therefore, has waived this
complaint.