

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00172-CV

THE ORCHARDS ON THE
BRAZOS, L.L.C.

APPELLANT

V.

BYRON STINSON

APPELLEE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
TRIAL COURT NO. C-2013-296

----------

## MEMORANDUM OPINION[1]

----------

This case regards the existence of an implied dedication of a public roadway over appellee and cross-appellant Byron Stinson's property. Appellant and cross-appellee The Orchards on the Brazos, L.L.C. appeals that part of the trial court's judgment declaring the roadway to be 12.2 feet wide. Stinson

---

[1]See Tex. R. App. P. 47.4.

appeals the trial court's order granting sanctions against him. We reverse and remand.

## Background Facts

In 2013, The Orchards purchased property straddling Hood and Somervell counties with the intent to develop the land into a 60-lot housing community. The Orchards's property sits in a bend of the Brazos River, and the only road access to the land is by a small road (sometimes referred to as County Road 307) that cuts through the neighboring property owned by Stinson. Stinson claimed that the road was private and made various attempts to limit The Orchards's use of it. Stinson sued in September 2013 for a declaration that there are no public roads or easements crossing his property and for injunctive relief. The Orchards countersued for a declaratory judgment and injunctive relief.[2] A jury found that the road had been impliedly dedicated to public use and that the width of the road was 12.2 feet.

After trial, Stinson took out an ad in a local newspaper that included statements regarding settlement offers that had been made during informal settlement negotiations. The Orchards filed a motion for sanctions, arguing that Stinson's ad violated the prohibition against disclosure of confidential communications under the Texas Alternative Dispute Resolution Act (the ADR

---

[2]The Orchards also sued for tortious interference and business disparagement. The trial court ordered that The Orchards take nothing on those claims, and that part of the judgment was not appealed.

Act).  *See* Tex. Civ. Prac. & Rem. Code Ann. § 154.073(a) (West 2011).  The trial court granted the motion and ordered Stinson to pay $5,000 in sanctions.  The Orchards then appealed the trial court's final judgment regarding the width of the road.  Stinson appealed the sanctions award.

## Discussion

### I. The width of the road

In two issues, The Orchards challenges the jury's finding regarding the width of the roadway.  Question No. 8 of the jury charge asked, "What do you find to be the width of the Disputed Roadway or easement?"  The jury answered 12.2 feet.  The Orchards argues that the evidence supporting the finding is legally insufficient and that the jury's finding should be disregarded.

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.  *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960).  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a

3

reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). If a party is attacking the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof, and there is no evidence to support the finding, we review all the evidence to determine whether the contrary proposition is established as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989).

The width of a dedicated road is determined at the time of dedication. *See Hayes v. Anderson Cnty.*, 315 S.W.3d 170, 177 (Tex. App.—Tyler 2010, pet. denied). Neither party challenges the jury's findings that the road has been impliedly dedicated to public use and that Stinson should have been aware of such public use by August 1996. Those findings are therefore binding on this court. *See Morrell v. Finke*, 184 S.W.3d 257, 285 n. 29 (Tex. App.—Fort Worth 2005, pet. denied). So while there is no jury finding regarding the date the road was originally dedicated, the latest that date could have been was August 1996.

**A. The evidence**

Stinson testified that he purchased the property in 1996. At the time of conveyance, a land title survey was done by W.L. "Will" Vaughn. Stinson submitted and the trial court admitted the survey into evidence as Plaintiff's Exhibit 4. The survey shows County Road 307 marked by hash marks. Vaughn

4

testified that when a road is marked like that, it was not measured but was "strictly a sketch."

Vaughn also testified that in surveying the land, he found some surveying markers in the ground placed by previous surveyors and also placed some markers himself. He testified, and his survey shows, that he set a marker about 32 feet south of the common line between Stinson's property and The Orchards's property on the east boundary of County Road 307. His survey also shows that he set a marker on the common property line on the west boundary of the road. On the south boundary of Stinson's property, where County Road 307 enters, Vaughn set a marker "at a fence corner" on the east boundary of the road.

Stinson testified that Sommerville County paved the road "about 25 years ago." He submitted photographs measuring the paved portion of the road by use of a six-foot stick. At the cattle gate leading to The Orchards's entrance, the photographs show the paved road to be "basically . . . 12 feet, maybe 13." The rest of the photographs show wider points along the road.

The Orchards submitted into evidence a report by a registered professional land surveyor named Kent McMillan. McMillan reviewed aerial photographs and geological surveys and concluded that the disputed road was in existence by 1924 "in essentially the same position" as it is now. The Orchards submitted an image that was a copy of the 1961 US Geological Survey Map overlaid onto a 2012 aerial photograph of the land, which showed the road to be in the exact same position in both the map and the aerial photograph. All of the maps and

5

aerial photographs show the road to be basically a consistent width from the highway through Stinson's property to The Orchards's property.

John Gabriel Margotta, also a registered professional land surveyor, testified that he and his firm prepared a title survey of The Orchards's property in 2013. He testified that the title survey he completed included County Road 307 coming from Stinson's property into The Orchards's property because "[o]n the previous surveys, we had references to County Road 307. The Foree deed also referenced County Road 307 coming up to that property line, and we found the monumentation called for in the Foree deed on both sides of the county road."

The Foree deed that Margotta referenced in his testimony was a deed executed in April 2003 by a prior owner of The Orchards's land. It was submitted into evidence as Defendant's Exhibit 19. It describes the land as being divided into seven tracts, and it grants an easement along tracts 2 through 6 "extending from County Road 307 to the boundary of Tract 7."

In the description of tract 1, the Foree deed notes that along the southern boundary of the property

> at 849.85 feet pass a 5/8" iron set for the southeast corner of an Access Road in the easterly line of County Road 307, in all a distance of 902.42 feet to a 6" Concrete Monument with an aluminum cap stamped '1472 RPS 314' set in the west line of said County Road, same being the . . . southeasterly corner of [the easement].

6

The deed further described the surveying marker stamped "1472 RPS 314" to be on "the common line of said Foree tract and the tract conveyed to [Byron] Stinson."

Margotta also testified that previous surveys (referred to at trial as the Gunn, Lyons, and Vaughn surveys) all show County Road 307 running through Stinson's property to The Orchards's property. The Gunn survey from 2003 was admitted as Defendant's Exhibit 26. It shows the location of the 1472 monument and records the width of County Road 307 as 52.58 feet wide at the dividing line between The Orchards's property and Stinson's property.[3] Margotta confirmed the distance between the two monuments as noted in the Gunn survey.

Margotta measured the width of the paved part of the road with a robotic total station, which uses a laser and prism to calculate distance. He plotted the road digitally, which survey The Orchards introduced as Defendant's Exhibit 9. The survey shows Margotta's calculations along eleven points in the road, and the width varies between 12.2 feet at its narrowest at the cattle guard at the end of the road to 24.2 feet further south. Stinson used a copy of Defendant's Exhibit

---

[3]The 1472 monument appears to be located approximately where Vaughn's survey indicates he also set a marker in 1996. Vaughn's survey shows his marker to be 1961.46 feet from the west corner on the common line. Margotta's survey shows the 1472 monument to be 1961.56 feet from the west corner. The Gunn survey notes that it found three of Vaughn's markers, but none of them are the marker near the 1472 monument. The Margotta survey indicates the same three Vaughn markers.

9 to mark where he had taken the photographs using the stick to measure the road.

### B. Discussion

Stinson argues that 12.2 feet is the width of the road because that width was all that was useable at the cattle guard. But using less of a dedicated roadway does not diminish the width of the dedication. *See Lambright v. Trahan*, 322 S.W.3d 424, 434 (Tex. App.—Texarkana 2010, pet. denied) ("The portion of the granted easement which was actually put to use does not dictate the width of the easement; the granted easement does."). Further, the right to a dedicated road "is not limited to the beaten path used, but includes sufficient land, where reasonably available, for drainage ditches, repairs, and the convenience of the traveling public." *Allen v. Keeling*, 613 S.W.2d 253, 254–55 (Tex. 1981); *see Graff v. Berry*, No. 06-07-00058-CV, 2008 WL 704310, at *9 (Tex. App.—Texarkana Mar. 18, 2008, pet. denied) (mem. op.) (noting that *Allen* concerns roads established by prescription but holding that the concept should apply to roads established by implied dedication). The narrowing of the road by the cattle guard to 12.2 feet and the measurements of the paved road are evidence that the travelable road is at least that wide at those points, but they are insufficient evidence of the actual width of the *dedication*. *See Elliott v. Elliott*, 597 S.W.2d 795, 802 (Tex. Civ. App.—Corpus Christi 1980, no writ). We therefore must sustain The Orchards's two issues and reverse that portion of the judgment. *See City of Keller*, 168 S.W.3d at 810.

8

**C. Disposition**

Here we reach the difficult question of what to do next. Usually, when we sustain a legal sufficiency issue, it is our duty to render judgment for the appellant because that is the judgment the trial court should have rendered. *Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176, 176 (Tex. 1986); *see* Tex. R. App. P. 43.3.

The Orchards argues that we should hold that the road is twenty feet wide because that is the smallest width of road that may be classified as a public road under the transportation code. *See* Tex. Transp. Code Ann. § 251.007(e)(1) (West 2013) ("[A] third class road may be less than 40 but not less than 20 feet wide."). However, the classifications under section 251.007 apply only to those roads that have been "laid out and established according to law." *See id.* § 251.002 (West 2013). Roads may also become public roads through other ways. *See Worthington v. Wade*, 17 S.W. 520, 520–21 (Tex. 1891) ("All roads which have been laid out and established by authority of the commissioners' courts are public roads. A road not originally established under the statute may become public . . ., in the sense that the public have the right to use it, by dedication."). In that sense, a road may be a public road without being a "public road." This is just such a road. *See Hayes v. Anderson County*, 315 S.W.3d 170, 176–77 (Tex. App.—Tyler 2010, pet. denied) (holding that impliedly dedicated county road was thirty-five feet wide despite county requirement that

9

roads be no less than fifty feet wide because that was width of road at time of dedication).

Although The Orchards's request for a 20-foot wide dedication could be supported on other reasoning, doing so would require us to decide a question of fact, which we cannot do. *See State v. Huffstutler*, 871 S.W.2d 955, 960 (Tex. App.—Austin 1994, no writ) ("When the only question presented on appeal concerns the legal sufficiency of the evidence, an appellate court does not have the authority to resolve a question of fact."). The only other evidence of the road's width, from the 2003 Gunn survey and Foree deed description of surveying markers placed on either side of County Road 307 on the common boundary between the two properties, is that the road is 52.58 feet wide. We cannot render on this evidence because it requires a fact finding that the road was the same width in August 1996, the date at which Stinson should have known of the public dedication, as it was when the markers were placed in 2003. And although Vaughn placed markers on the sides of the road and surveys were admitted showing the relative placement of those markers, which may indicate the width of the road in 1996, The Orchards failed to use that evidence to conclusively establish the width so that we can render a judgment based on the record.

We therefore hold that the evidence regarding the width of the road is not conclusive or so developed that we may render judgment on the width. We must remand the case in the interest of justice to the trial court for a new trial on the

10

width of the road. *See id.* at 960–61 (holding that no evidence supported jury's finding of property value but remanding for new trial because evidence did not conclusively establish another value); *Wegner v. State*, 829 S.W.2d 922, 923 (Tex. App.—Tyler 1992, writ denied) (holding that no evidence supported jury's damages finding but remanding because evidence of two different values did not establish either as correct amount as a matter of law); *Elliott*, 597 S.W.2d at 801–03 (remanding for a new trial in the interest of justice when the applicable facts had not been sufficiently developed).

## II. The sanctions award

In his cross-appeal, Stinson argues that the trial court abused its discretion by awarding sanctions against him for disclosing settlement negotiations. A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). "A sanctions award that fails to comply with due process constitutes an abuse of discretion because a trial court has no discretion in determining what the law is or applying the law to the facts." *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014).

After the jury had returned a verdict, Stinson published an advertisement in a local newspaper that stated in part, "At one point we turned down an offer of 100K from the developer . . . !" The Orchards filed a motion for sanctions, claiming that this compensation offer was made during "confidential

11

communications," as defined by the ADR Act. Stinson argued in response that the offer was made after the court-ordered mediation failed to produce a settlement.

The ADR Act states,

[A] communication relating to the subject matter of any civil or criminal dispute made by a participant in an alternative dispute resolution procedure, whether before or after the institution of formal judicial proceedings, is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding.

Tex. Civ. Prac. & Rem. Code Ann. § 154.073(a). The ADR Act defines five types of alternative dispute resolution procedures: mediation, mini-trial, moderated settlement conference, summary jury trial, and arbitration. *See id.* §§ 154.023–.027 (West 2011). It does not cover informal settlement negotiations. *See Abbott v. GameTech Intern., Inc.*, No. 03-06-00257-CV, 2009 WL 1708815, at *4 (Tex. App.—Austin June 17, 2009, pet. denied) (mem. op.) ("The alternative dispute resolution procedures described in chapter 154 do not include informal settlement negotiations between the parties conducted without an impartial third-party facilitator.").

The Orchards does not dispute Stinson's claim that the offer that he publicized in his advertisement was not made during mediation but as part of private settlement discussions outside the presence of a third-party facilitator. The offer was therefore not subject to the confidentiality requirements of the ADR Act. *See id.*, at *5 ("Even if the exchange of the settlement letters at issue in this

12

case . . . could be generally classified as an 'alternative dispute resolution procedure,' it is not one covered by the confidentiality provisions contained in . . . chapter 154 of the civil practice and remedies code . . . ."). While one may understandably argue that touting a party's refusal to settle for a certain sum of money is not of the utmost tact, we cannot say that it rises to sanctionable behavior. *See TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (holding that a just sanction is "directed against the abuse and toward remedying the prejudice caused the innocent party"). We therefore sustain Stinson's issue.

## Conclusion

Having sustained The Orchards's two issues, we reverse that part of the trial court's judgment declaring the roadway to be 12.2 feet wide. Having sustained Stinson's issue, we reverse the trial court's sanction award. We remand the case to the trial court in the interest of justice for a new trial on the width of the road.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and GABRIEL, JJ.

DELIVERED:  March 19, 2015

13